EXHIBIT - 1

**This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.**
**Forms are free at ilcourts.info/forms.**

| STATE OF ILLINOIS, CIRCUIT COURT | SUMMONS | For Court Use Only |
|---|---|---|
| St. Clair ▾ COUNTY | | |

| Instructions ▾ | |
|---|---|
| Enter above the county name where the case was filed. | CRYSTAL BROWN, on behalf of herself and those simila<br>**Plaintiff / Petitioner** (*First, middle, last name*) |
| Enter your name as Plaintiff/Petitioner. | v. |
| Below "Defendants/ Respondents," enter the names of all people you are suing. | **Defendants / Respondents** (*First, middle, last name*)<br>SANTANDER CONSUMER USA INC., et al, |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** (*Check this box if this is not the 1st Summons issued for this Defendant.*) |

**24-LA-0123**

**Case Number**

## IMPORTANT: You have been sued.

- Read all documents attached to this Summons.

- You MUST file an official document with the court within the time stated on this Summons called an *Appearance* and a document called an *Answer/Response*. If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

- All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.

- You may be charged filing fees, but if you cannot pay them, you can file an Application for Waiver of Court Fees.

- It is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

- Need help? Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents. You can also get free legal information and legal referrals at illinoislegalaid.org. All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- ¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

### Plaintiff/Petitioner:

**Do not use this form** in these types of cases:

- All criminal cases
- Eviction
- Small Claims
- Divorce

- Order of protection
- Paternity
- Stalking no contact orders
- Civil no contact orders

- Adult guardianship
- Detinue
- Foreclosure
- Administrative review cases

For eviction, small claims, divorce, and orders of protection, use the forms available at ilcourts.info/forms. If your case is a detinue, visit illinoislegalaid.org for help.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

Enter the Case Number given by the Circuit Clerk: 24-LA-0123

| | | |
|---|---|---|
| In **1a**, enter the name and address of the first Defendant/Respondent you are serving. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1.** | **Defendant/Respondent's address and service information:** |

**1.**  **Defendant/Respondent's address and service information:**

a.  Defendant/Respondent's primary address/information for service:

Name *(First, Middle, Last)*:  SANTANDER CONSUMER USA INC.

Registered Agent's name, if any:  CT Corporation System

Street Address, Unit #:  208 S. LaSalle Street, Suite 814

City, State, ZIP:  Chicago, IL 60604

Telephone: _____  Email: _____

In **1b**, enter a second address for the first Defendant/Respondent, if you have one.

b.  If you have more than one address where Defendant/Respondent might be found, list that here:

Name *(First, Middle, Last)*: _____

Street Address, Unit #: _____

City, State, ZIP: _____

Telephone: _____  Email: _____

In **1c**, check how you are sending your documents to this Defendant/Respondent.

c.  Method of service on Defendant/Respondent:

☐ Sheriff      ☐ Sheriff outside Illinois: _____
                                                    *County & State*

☑ Special process server      ☐ Licensed private detective

Check here if you are serving more than 1 Defendant/Respondent. Attach an *Additional Defendant/Respondent Address and Service Information* form for each additional Defendant/Respondent and write the number of forms you attached.

☐ **I am serving more than 1 Defendant/Respondent.**

I have attached _____ *Additional Defendant/Respondent Address*
                         *Number*

and Service Information forms.

**2.**  **Information about the lawsuit:**

a.  Amount claimed:  $ _____

☐ b.  I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession).

In **2a**, enter the amount of money owed to you. Check **2b** if you are asking for the return of tangible personal property.

In **3**, enter your complete address, telephone number, and email address, if you have one.

**3.**  **Contact information for the Plaintiff/Petitioner:**

Name *(First, Middle, Last)*: SWMW LAW; Benjamin R. Schmickle #6270568

Street Address, Unit #:  701 Market Street, Suite 1000

City, State, ZIP:  St. Louis, MO 63101

Telephone:  (314) 480-5180      Email:  asbestos@swmwlaw.com

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

**Important information for the person getting this form**

You have been sued. Read all of the documents attached to this *Summons*. To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: ilcourts.info/forms.

Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**.

**4.**  **Instructions for person receiving this *Summons* (Defendant):**

☑ a.  To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:

Address:  #10 Public Square

City, State, ZIP:  Belleville, IL 62220

<table>
<tr><td>

In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response.*

In **4b**, fill out:
- The court date and time the clerk gave you.
- The courtroom and address of the court building.
- The call-in or video information for remote appearances (if applicable).
- The clerk's phone number and website. All of this information is available from the Circuit Clerk.

</td><td>

☐  b.  **Attend court:**
**On:** _____ at _____ ☐ a.m. ☐ p.m. in _____
               *Date*             *Time*                  *Courtroom*
**In-person at:**

_____
*Courthouse Address*      *City*          *State*     *ZIP*
OR
**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):
      By telephone: _____
                      *Call-in number for telephone remote appearance*
      By video conference: _____
                           *Video conference website*

      _____
      *Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk at: _____ or visit their website
                     *Circuit Clerk's phone number*
at: _____ to find out more about how to do this.
    *Website*

</td></tr>
</table>

<table>
<tr><td>

**STOP!**

The Circuit Clerk will fill in this section.

</td><td>

**Witness this Date:** _____

**Clerk of the Court:** 2/6/2024
                     Morgan Ragsdale

</td><td>

Seal of Court

KENNIS WILLIAMS, SR., Circuit Clerk

</td></tr>
</table>

---

**STOP! The officer or process server will fill in the Date of Service**

**Note to officer or process server:**
- If 4a is checked, this *Summons* must be served within 30 days of the witness date.
- If 4b is checked, this *Summons* must be served at least 21 days before the court date, unless 2b is also checked.
  - If 4b and 2b are checked, the *Summons* must be served at least 3 days before the court date.

---

      Date of Service: _____
                         *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*

Enter the Case Number given by the Circuit Clerk: 24-LA-0123

**This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.**
**Forms are free at ilcourts.info/forms.**

| STATE OF ILLINOIS, CIRCUIT COURT<br><br>St. Clair ▼ COUNTY | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|

| Instructions | | |
|---|---|---|
| Enter above the county name where the case was filed. | CRYSTAL BROWN, on behalf of herself and those simila<br>**Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br><br>SANTANDER CONSUMER USA INC., et al,<br><br>**Defendant / Respondent** *(First, middle, last name)* | |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | 24-LA-0123<br>**Case Number** |

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form. Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent.\*\***

**My name is** _____ **and I state**
*First, Middle, Last*

☐ **I served the** *Summons* **and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

    ☐ Personally on the Defendant/Respondent:
        ☐ Male   ☐ Female   ☐ Non-Binary    Approx. Age: _____ Race: _____
        On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
        Address, Unit#: _____
        City, State, ZIP: _____

    ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:
        On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
        Address, Unit#: _____
        City, State, ZIP: _____
        And left it with: _____
                *First, Middle, Last*
        ☐ Male   ☐ Female   ☐ Non-Binary    Approx. Age: _____ Race: _____
        and by sending a copy to this defendant in a postage-paid, sealed envelope to the above address on this date: _____ .

    ☐ On the Corporation's agent, _____
                         *First, Middle, Last*
        ☐ Male   ☐ Female   ☐ Non-Binary    Approx. Age: _____ Race: _____
        On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
        Address: _____
        City, State, ZIP: _____

☐ **I was not able to serve the** *Summons* **and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

2.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

3.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

| | |
|---|---|
| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the** *Proof of Service of Summons* **is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

**By:**

Under the Code of Civil Procedure, <u>735 ILCS 5/1-109</u>, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

_____
*Signature by:*  ☐ Sheriff
                 ☐ Sheriff outside Illinois:

                 _____
                 *County and State*
                 ☐ Special process server
                 ☐ Licensed private detective

_____
*Print Name*

**FEES**

Service and Return:   $ _____
Miles _____   $ _____
Total                 $ 0.00

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

Electronically Filed
Kinnis Williams, Sr.
Circuit Clerk
Nora McDaniel
24LA0123
St. Clair County
1/24/2024 2:09 PM
26107040

IN THE CIRCUIT COURT OF ST. CLAIR COUNTY
STATE OF ILLINOIS

CRYSTAL BROWN, on behalf of herself )
and those similarly situated, )
)
    Plaintiff, )
)
v. )    Case No. 24LA0123 _____
)
SANTANDER CONSUMER USA INC. )
Serve: C T CORPORATION SYSTEM )
    208 SO LASALLE ST, SUITE 814 )
    CHICAGO, IL 60604-1101 )

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Crystal Brown, by and through her undersigned counsel, and for her Class Action Complaint, alleges the following:

## INTRODUCTION

1.    This is an action for damages and other relief arising from the void and fraudulent sales of automobiles and the collection of on debts from those sale by Defendant Santander Consumer USA Inc. ("Santander").

2.    Plaintiff Crystal Brown and others similarly situated signed a retail installment contract to purchase a vehicle, which contracts were subsequently sold to Santander. However, the sales were tainted by a violation of the warranty of title under UCC 2-312, as the dealerships that sold the vehicles to Ms. Brown, and others like her, failed to provide a certificate of ownership with clear title. Instead—as in the case of Ms. Brown—the vehicles had preexisting liens on them from another financial institution. This prevented Ms. Brown and the class members from registering the vehicles with state authorities and actually obtaining legal title to them.

3.    Despite Ms. Brown informing Santander of this situation, Santander persisted in demanding that Brown make payments for a vehicle to which she was not actually given

ownership. In other words, Santander pressured and demanded Brown make payments even though Brown didn't get the fruits of a contract she expected to get—that is, a car she *owned with clear title*. Santander's continued attempts to collect "debts" on these contracts, and its continued demand and acceptance of payments on such contracts, violated various state consumer protection statutes.

4.     Santander's conduct violates various state consumer statutes, UCC § 2-312's warranty of title adopted by all 50 states in the Union, and common law and equitable principles. A class action should be certified to remedy Santander's previous violations of the law with respect to everyone who has been harmed and to enjoin Santander in ways that will prevent this from happening in the future.

**PARTIES**

5.     Plaintiff Crystal Brown is a natural person and a resident of the City of St. Louis, State of Missouri.

6.     Defendant Santander is an Illinois corporation licensed to do business in Illinois and many other states throughout the union. Santander's principal place of business is in Texas. Its principal business consists of purchasing retail installment sales contracts from car dealers and collecting payments of principal and interest on those debts from individuals who have purchased automobiles. Santander can be served on its registered agent listed in the caption above.

**GENERAL ALLEGATIONS**

7.     In the summer of 2021, Crystal Brown wanted to trade in her 2006 Hyundai Santa Fe and purchase a different car. She had clear title to this Hyundai Santa Fe. In looking for a different car, she went to the Frank Leta Honda dealership in O'Fallon, Missouri.

2

8.      On July 3, 2021, Brown signed a number of documents at the Frank Leta Honda dealership, including a Retail Installment Sale Contract (RISC), in which she agreed to purchase a 2016 Honda Pilot for $25,699.99 (of which $24,516.99 was financed), plus interest at a rate of 19.05% per annum, for total payments of $41,639.04.

9.      As part of the same transaction, Brown traded in her Hyundai Santa Fe to Frank Leta, and Frank Leta agreed to pay her $1,700 for her vehicle (to be credited toward the purchase price of the Honda Pilot).

10.     On the same day that Brown entered into the retail installment contract, it was assigned to Santander, who would collect payments from Ms. Brown.

11.     At the time of the purported sale of the Honda Pilot, Ms. Brown also signed and was given several other documents.

12.     One such document was a "Vehicle SAFETY Inspection Report." That document represented that the owner of the vehicle was "Frank Leta Honda," without disclosing any liens encumbering title to the Honda Pilot. Another document was an "Application for Missouri Title and License." Frank Leta had completed much of this form for Ms. Brown at the time of purchase for her to use when attempting to register the Honda Pilot and get state-issued title to it. On that Application, Frank Leta wrote that "Santander Consumer USA" had the "first lien" to the Honda Pilot.

13.     Not once during the sale process did Frank Leta inform Ms. Brown that the Honda Pilot was encumbered by a pre-existing lien from a company other than Santander that Frank Leta failed to satisfy.

14.     At the time of the sale, Frank Leta charged Ms. Brown $17.00 to provide her with temporary tags so she could drive the vehicle. This was purportedly a preliminary step to providing

3

her with a Certificate of Title to Honda Pilot, through which she would purportedly be able to register the vehicle with the state of Missouri and get proper title in her name to the vehicle. However, Frank Leta did not actually give Ms. Brown valid temporary tags.

15.    Frank Leta did not pay in full all existing liens on the Honda Pilot before selling it to Ms. Brown. Nor did Frank Leta provide Ms. Brown a copy of proof or other evidence regarding the satisfaction of any such liens, since Frank Leta did not satisfy those liens.

16.    Sometime after the sale, Frank Leta provided Ms. Brown with a Certificate of Title. (*See* Exhibit 2). That Certificate of Title stated the "Owners" of the Honda Pilot were two individuals from St. Charles. It also provided that the "First Lien" in the vehicle was held by "Bank of America NA." The Certificate of Title provides that the lienholder must complete a notarized lien release to be attached to the title before a purchaser applies for a new Certificate of Title.

17.    It is apparent that Frank Leta purchased the Honda Pilot subject to existing liens and subsequently sold the same vehicle to Ms. Brown without resolving those liens. Under RSMo. § 301.200.1, motor vehicle dealers are required to show that a "prior lien has been satisfied" "in the case of each motor vehicle in [its possession]" before selling a motor vehicle to a purchaser like Ms. Brown. Likewise, with the repeal by expiration of RSMo. § 301.213, it is clearly illegal for motor vehicle dealers to obtain vehicles subject to liens and sell them to purchasers like Ms. Brown. Contractual arrangements of this type are illegal.

18.    Furthermore, all 50 states impose on commercial transactions a "warranty of title" as a term in the contract in the Uniform Commercial Code ("UCC"). Under UCC § 2-312, "there is in a contract for sale a warranty by the seller that … (a) the title conveyed shall be good, and its transfer rightful; and (b) the goods shall be delivered *free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge*."

4

19.     Ms. Brown attempted to register the Honda Pilot with the state of Missouri as required by law. However, she was told she could not register the Honda Pilot and obtain title because of the preexisting lien on it.

20.     Afterwards, Ms. Brown called Santander to advise that she needed a lien release to get proper title in the Honda Pilot. Santander responded that she would need to pay off her loan to Santander in full before she obtained a lien release. This is obviously preposterous, as it would require Ms. Brown to fully pay off the loan before she could get legal title to the Honda Pilot, defeating the very purpose of taking out a loan to acquire possession of a vehicle in the first place.

21.     Ms. Brown attempted to register the vehicle a second time to no avail. On this second occasion, the representative of the Department of Revenue suggested she contact Frank Leta. Ms. Brown did so. When she did, Frank Leta's representative said: "huh, it looks like we sold the car with a lien on it which we aren't really supposed to do." This person transferred Ms. Brown to a supposed "finance manager," for whom she left a message. Frank Let never did anything to remedy the problem.

22.     Ms. Brown has advised Santander of this problem on several occasion, but they refuse to assist her and insist that she is still responsible for paying the loan on the Retail Installment Contract.

23.     As proof of this, attached as Exhibit 1 to this Complaint are emails Ms. Brown sent to Santander. Ms. Brown only sent these emails to Santander after having requested, multiple times, a method by which she could email Santander and keep her communications in writing. These emails reference and reflect phone calls that Ms. Brown made to Santander informing them of this situation as well. To summarize:

   a.  On April 27, 2023, Ms. Brown sent an email to Santander. In that email, she
       informed Santander of the financial distress being caused by this invalid auto loan,

5

and noted: "I can't give [the vehicle] back because it was sold to me with a lean [sic] on it. I don't know why or how, but the state would not even allow me to register it. I just can't afford all of this abd [sic] I really need help."

b.   On November 30, 2023, at 10:26 AM, Ms. Brown emailed Santander again. In that email, she referenced a telephone conversation she had with a Santander employee, stating: "Thank you for offering to help resolve the issue of my Honda Pilot, 2016 and the illegal sale resulting in a lien placed on the car that even Santander is unaware of." It appears Santander misrepresented that it did not know about the preexisting lien despite her prior email and numerous phone calls to Santander on that subject. Ms. Brown went on to say that "agent #796558" told her that the agent "was to follow up with the Missouri DMV to obtain proof that there was already a lien on the car at the time of purchase. Since Frank Leta did not disclose this to Santander it is something she also offered to resolve so that I don't have to continue getting lied to here as a disabled consumer." Desperate for the situation to end so she could provide a stable environment for her children, Ms. Brown also stated: "As discussed yesterday we will be proceeding with a canceling of the contract that will include removing any and all derogatory credit information that is currently impacting me so harshly that it has left me unable to provide stable housing for my boys. I need the negative scars gone so I can begin to have a chance at stable housing again." She then proceeded to tell Santander she was considering getting a lawyer involved, but "hopefully it is a simple resolve and I can return the car without a repossession or any negative impact on my credit score any longer."

c.   On November 30, 2023, at 10:37 AM, Ms. Brown sent another email to Santander providing a benefit letter from the Social Security Administration verifying she had a disability. With respect to the invalid RISC, she stated: "Now 2 years after I have made payments and every effort to continue paying even despite my inability to register the car and countless hours needed to investigate and even find out what Missouri DMV was taking about and why they wouldn't allow me to register a car. I'm have [sic] paid off several auto loans in my long history, and never have I ever had an issue registering a vehicle. This was expressed to Santander in 2021 then again in 2022. When I finally went in this year to request one last time I managed to squeeze additional information out of her that the lien is through Bank of America." Obviously frustrated with Santander's continued misrepresentations that they don't know about the lien issue, Ms. Brown stated: "As agent ID number 796558 mentioned yesterday Santander continues to remain unaware of this lien, despite my numerous attempts to inform them myself that something was not right there."

24.     Santander did not make good on its promises to fix the situation even after receiving these emails confirming that Ms. Brown repeatedly advised them that she was sold a vehicle with a preexisting lien in violation of the UCC warranty of title. Instead, Santander continued

6

demanding Ms. Brown make payments on the RISC even after Ms. Brown sent these emails. Indeed, it got to the point where Santander was calling her almost daily, harassing her to make payments on an invalid loan.

25.    Ms. Brown has made monthly payments on the RISC in excess of $9,000 based on Santander's persistent insistence that the title issue is "her problem."

26.    In addition, Ms. Brown has suffered extensive damages due to the sale of this vehicle, including the purchase price of the vehicle, damages available under UCC 2-714, incidental and consequential damages under UCC 2-715, receiving traffic citations for driving without proper registration (since without the title, she could not obtain a license plate), assessment of personal property taxes, payment of insurance, and fees, all of which she cannot satisfy without the Honda Pilot's title, as well as other costs, including the costs to maintain the Honda Pilot. Additionally, Ms. Brown has suffered substantial damages resulting from her loss of time, inconvenience, annoyance, embarrassment, loss of creditworthiness, invasion of privacy, and other such damages, resulting from the improper sale and Santander's subsequent failure to take any action to remedy it while improperly demanding payments thereon.

27.    The actions of Santander, as described herein, were done to intentionally harm Plaintiff without just cause or were done with deliberate and flagrant disregard for the safety of others.

## CLASS ALLEGATIONS

28.    Crystal Brown files this lawsuit for herself and for the classes designated under 735 ILCS 5/2-801 to remedy the ongoing unfair, unlawful, or deceptive business practices alleged, and seeks redress for all those persons harmed.

29.    The "Damages Class" comprises all persons in the United States:

7

a. Who purchased a motor vehicle from a motor vehicle dealer through a retail installment contract similar to that entered into by Crystal Brown;

b. Who were sold a vehicle with a preexisting lien or security interest that was not satisfied before the vehicle was sold to him or her;

c. Whose retail installment contract is or was held by Santander; and

d. From whom Santander collected or attempted to collect payments on the retail installment contract.

30. The "Injunction Class" comprises all persons in the United States:

a. Who purchased a motor vehicle from a motor vehicle dealer through a retail installment contract similar to that entered into by Crystal Brown or may in the future do so;

b. Who were sold, or may in the future be sold, a vehicle with a preexisting lien or security interest that was not satisfied before the vehicle was sold to him or her;

c. Whose retail installment contract is, was, or will be held by Santander; and

d. From whom Santander collected, attempted to collect, or will collect payments on the retail installment contract.

31. The Damages Class and Injunction Class are collectively referred to as the "Classes."

32. Plaintiff reserves the right to revise either of the definitions of the Classes.

33. Brown and each member of the Classes purchased vehicles about which Santander knew, or should have known through reasonable diligence, had preexisting liens on them in violation of the warranty of title and, thus, making collection on the retail installment contracts unjust and illegal.

8

34.     Each member of the Classes purchased their vehicles for use primarily for personal, family, or household purposes.

35.     Members of the Classes are so numerous that joinder is impracticable. Upon information and belief, each of the classes exceed forty (40) persons.

36.     Plaintiff will assure the adequate representation of all members of the Classes and will have no conflict with class members in the maintenance of this action.

37.     Plaintiff's interests are typical of the Classes.

38.     Plaintiff has no interest or relationship with Defendant that would prevent her from litigating this matter fully.

39.     Plaintiff's counsel is competent and experienced in consumer and class litigation.

40.     A class action will provide a fair and efficient method to adjudicate this controversy since the claims of the class members are virtually identical in that they raise the same questions of law and involve the same methods of collection by Defendant.

41.     The purposes of various state consumer protection statutes will be best effectuated by a class action.

42.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.

43.     Many, if not all, class members are unaware that claims exist against Defendant.

44.     The following common questions of law and fact predominate over all individual questions of the Classes: (1) whether class members purchased vehicles with preexisting liens; (2) whether, in collecting on retail installment contracts where class members purchased vehicles with preexisting liens, Santander violated the warranty of title under UCC 2-312 adopted by all 50 states; (3) whether, in collecting on retail installment contracts where class members purchased

9

vehicles with preexisting liens, Santander violated state consumer protection statutes; and (4) whether, in collecting on retail installment contracts where class members purchased vehicles with preexisting liens, Santander violated state common law and/or equitable principles.

45.    Because many class members are unaware of their claims and because their claims are small in relation to the cost of an individual suit, a class action is the only proceeding in which class members can, as a practical matter, recover.

46.    If each of the class members was forced to bring an individualized suit, such suits would burden judicial resources and would create the risk of multiple inconsistent results for similarly situated parties.

47.    Concentrating the litigation of Plaintiff's and the class members' claims is also desirable and logical given the predominance of common questions of law and fact alleged above.

48.    Plaintiffs and the Damages Class were damaged and may recover their actual damages not less than the amounts permitted under UCC 2-714 and UCC 2-715. The Damages Class should be certified under 735 ILCS 5/2-801 as the superior method for the fair and efficient adjudication of this controversy with respect to the issue of damages.

49.    The Injunction Class should be certified under 735 ILCS 5/2-801, as Santander has acted or refused to act on grounds that apply generally to the Injunction Class, thereby making final injunctive relief or corresponding declaratory relief is appropriate respecting the Injunction Class as a whole.

## COUNT I – STATE CONSUMER PROTECTION

50.    Plaintiff realleges all preceding paragraphs and incorporates them by this reference as if fully set forth herein.

51.     Plaintiff and the class members defined herein are persons entitled to protection of state consumer protection statutes in the following states: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming (hereinafter the "consumer protection statutes").[1]

52.     These statutes allow for the bringing of a private right of action and for plaintiffs to obtain injunctive and equitable relief against defendants, like Santander.

53.     As to Plaintiff Crystal Brown, she is entitled to pursue an action against Santander under the Missouri Merchandising Practices Act, RSMo. § 407.010, *et seq.*

54.     Plaintiff and the class members purchased vehicles which were improperly subject to preexisting liens. The dealers—assignors to Santander—violated UCC 2-312 by selling vehicles to consumers in this way.

---

[1] The consumer protection statutes are: Ala.Code 1975 § 8-19-10 (Alabama); AS 45.50.471-45.50.561 (Alaska); A.R.S. § § 44-1521 to 44-1534 (Arizona); A.C.A. § 4-88-107 (Arkansas); Cal.Civ.Code § 1750, *et seq.* (California); C.R.S.A. § 6-1-101, *et seq.* (Colorado); C.G.S.A. § 42-110b *et seq.* (Connecticut); 6 Del.C. § 2513 *et seq.* (Delaware); F.S.A. § 501.204 (Florida); GA ST § 10-1-393 (Georgia); HRS § 481A-1 (Hawaii); 815 ILCS 505/10a (Illinois); IC 24-5-0.5-4 (Indiana); I.C.A. § 714H.5 (Iowa); K.S.A. 50-634 (Kansas); KRS § 367.220 (Kentucky); LSA-R.S. 51:1409 (Louisiana); 5 M.R.S.A. § 213 (Maine); MD Code, Commercial Law, § 13-408 (Maryland); M.G.L.A. 93A § 9 (Massachusetts); M.C.L.A. 445.911 (Michigan); MSA § 325F.69 and MSA § 8.31 (Minnesota); RSMo. § 407.025 (Missouri); MCA 30-14-133 (Montana); Neb.Rev.St. § 59-1609 (Nebraska); N.R.S. 41.600 (Nevada); N.H. Rev. Stat. § 358-A:10 (New Hampshire); N.J.S.A. 56:8-19 (New Jersey – treble damages); N.M.S.A. 1978, § 57-12-10 (New Mexico); N.Y. Gen. Bus. Law § 349 (New York); N.C.G.S.A. § 75-16 (North Carolina – treble damages); NDCC, 51-15-09 (North Dakota – treble damages); R.C. § 1345.09 (Ohio); 15 Okl.St.Ann. § 753 (Oklahoma); O.R.S. § 646.638 (Oregon); 73 P.S. § 201-9.2 (Pennsylvania); RI ST § 6-13.1-5.2 (Rhode Island); SC ST § 39-5-140 (South Carolina); SDCL § 37-24-31 (South Dakota); T. C. A. § 47-18-109 (Tennessee); V.T.C.A., Bus. & C. § 17.50 (Texas); U.C.A. 1953 § 13-11-19 (Utah); 9 V.S.A. § 2461 (Vermont – treble damages); VA Code Ann. § 59.1-204 (Virginia); RCWA 19.86.090 (Washington – treble damages); W. Va. Code, § 46A-6-106 (West Virginia); W.S.A. 425.301-425.309 (Wisconsin); W.S.1977 § 40-12-108 (Wyoming).

55.     Plaintiff and the class members purchased the vehicles primarily for personal, family, or household purposes. These are the types of transactions covered by the consumer protection statutes.

56.     Defendant is an entity subject to these consumer protection statutes.

57.     In connection with these transactions, the motor vehicle dealers committed the unfair or deceptive acts or practices, for which Santander is also liable as assignee of the retail installment contracts, by selling the motor vehicles although they are subject to preexisting liens without informing Plaintiff or the class members in violation of the warranty of title under UCC 2-312 and other state law.

58.     Likewise, Santander committed unfair or deceptive acts or practices by collecting or attempting to collect on these loans despite the sales of the vehicles being invalid due to the existence of a lien on the vehicles sold to Plaintiff and the class members. These are people who, like Plaintiff were unable to obtain proper title and, thus, did not receive the fruits of the retail installment contracts for which Santander continued to demand payment without taking steps to rectify the problem.

59.     Santander also committed unfair and deceptive acts or practices by continuing to make repeated harassing phone calls to Plaintiff and the class members after being notified that the vehicles sales were invalid due to the vehicles being sold with a preexisting lien.

60.     Plaintiff and the class members were damaged by these breaches of warranty at least in the amount of money paid on the retail installment contracts to Santander, the down payment on the vehicles, payments to insure the vehicles, personal property taxes and sales taxes paid on the vehicles, payment of traffic citations for failure to register the vehicles, and for the loss of possession of any vehicle traded in as part of the transaction.

61.    Pursuant to these consumer protection statutes, Plaintiff and the class seek actual damages, costs, reasonable attorney's fees, and injunctive relief as stated in the prayer for relief, below.

## COUNT II – UCC BREACH OF WARRANTY OF TITLE

62.    Plaintiff realleges all preceding paragraphs and incorporates them by this reference as if fully set forth herein.

63.    The retail installment contracts of Plaintiff and those of the class were for the purchase of goods under the UCC. *See* UCC § 2-102.

64.    The dealers who sold Plaintiff and the class members vehicles with preexisting liens were "merchants" under UCC § 2-104(1).

65.    Under UCC § 2-312, in every sale of goods there is "a warranty by the seller that … (a) the title conveyed shall be good, and its transfer rightful; and (b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge." This is known as the "warranty of title."

66.    The motor vehicle dealers who sold vehicles to Plaintiff and the class members breached the warranty of title by selling vehicles with preexisting liens on them.

67.    Santander, as the holder of retail installment contracts concerning these sales, is liable for the actions of the motor vehicle dealers and for continuing to collect and/or attempt to collect on these loans tainted by a breach of the warranty of title.

68.    Plaintiff and the class members were damaged by these breaches of warranty at least in the amount of money paid on the retail installment contracts to Santander, the down payment on the vehicles, damages owed under UCC 2-714, incidental and consequential damages under UCC 2-715, and for the loss of possession of any vehicle traded in as part of the transaction.

69.    Plaintiff and the class seek actual damages, costs, reasonable attorney's fees, and injunctive relief as stated in the prayer for relief, below.

## COUNT III – NEGLIGENT MISREPRESENTATION

70.    Plaintiff realleges all preceding paragraphs and incorporates them by this reference as if fully set forth herein.

71.    Santander made false statements of material fact when it continued to make efforts to collect on retail installment contracts relating to vehicles sold with preexisting liens, as any representation that the borrowers were obligated to make payments was false.

72.    Santander was careless or negligent in ascertaining the truth of its statements, in that Santander knew or through reasonable diligence should have known that the borrowers were not obligated to make payments on loans concerning vehicles for which they were not provided clear title, as such loans were invalid and void.

73.    Santander's negligent misrepresentations were intended to induce the class members to make payments on loans they had no obligation to make.

74.    The class members acted in reasonable and justifiable reliance on the truth of these negligent misrepresentations by making payments on the loans.

75.    Plaintiff and the class members were damaged by these breaches of warranty at least in the amount of money paid on the retail installment contracts to Santander, the down payment on the vehicles, and for the loss of possession of any vehicle traded in as part of the transaction.

## COUNT IV – UNJUST ENRICHMENT

76.    Plaintiff realleges all preceding paragraphs and incorporates them by this reference as if fully set forth herein.

77.     Santander was unjustly enriched by receiving the benefit of payments on retail installment contracts that were invalid and tainted by breach of the warranty of title.

78.     This unjust enrichment was at the expense of Plaintiff and the class members.

79.     It would be unjust to allow Santander to retain these benefits under the circumstances.

80.     Plaintiff and the class members seek restitution in the amount of payments unjustly made to Santander on such transactions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of each member of the proposed Classes, prays the Court grant the following relief:

a.   Enter an order certifying this action as a class action and appointing Crystal Brown as the representative of the Classes.

b.   Enter an order appointing Benjamin S. McIntosh of SWMW Law, LLC, as counsel and lead counsel of the Classes;

c.   In the event the class is certified, enter judgment in favor of Plaintiffs and members of the Damages Class in the sum of the amounts paid to Santander on retail installment contracts, the amount of any down payment made by the class members, the fair market value of any trade-in vehicle, and reasonable attorney's fees and expenses (including the expenses of class notice and administration);

d.   Enter judgment awarding Plaintiff a reasonable service award for serving as the representative of the Classes;

e.   Enter a preliminary injunction and judgment of permanent injunction against Defendant in favor of the Injunction Class requiring Defendant to (1) cease accepting

15

payments on any retail installment contract in which the borrower was sold a vehicle with a preexisting lien on it; (2) cease seeking, requesting, demanding, or attempting to obtain in any way payments on any retail installment contract in which the borrower was sold a vehicle with a preexisting lien on it; (3) cease attempting to repossess any vehicles on retail installment contracts in which the borrower was sold a vehicle with a preexisting lien on it; (4) dismiss all lawsuits brought against borrowers seeking to enforce any retail installment contract in which the borrower was sold a vehicle with a preexisting lien on it; (5) notify any subsequent purchasers of any retail installment contract in which the borrower was sold a vehicle with a preexisting lien on it of such injunction and to buy back any such loans from any subsequent purchaser of the loan instrument if buy backs are permitted by the instrument through which the loan was sold to the subsequent purchaser; (6) delete all trade lines and other negative information reported to credit reporting agencies by Santander with respect to all loans on retail installment contracts in which the borrower was sold a vehicle with a preexisting lien on it; and (7) diligently take all steps to identify borrowers that were sold a vehicle with a preexisting lien on it in order to comply with the foregoing.

f.   Enter judgment awarding pre-judgment interest, post-judgment interest, costs, statutory attorney's fees, and any further and additional relief as the Court deems just or to which Plaintiff and/or the Class may be entitled.

16

Respectfully Submitted,
SWMW LAW, LLC

By:    */s/ Benjamin S. McIntosh*
Benjamin S. McIntosh, #6325759
ben.mcintosh@swmwlaw.com
Attorneys for Defendant
701 Market Street, Suite 1000
St. Louis, MO 63101
(314) 480-5180
(314) 932-1566 – Facsimile

17



---------- Forwarded message ----------
From: **Crystal B** <crysb77@gmail.com>
Date: Thu, Apr 27, 2023 at 9:13 AM
Subject: Case #91702498
To: <complaints@nctx.bbb.org>


Hello

I am having a hard time following up on this case. I'm continuing to struggle to make $600 monthly in car payments but will need to soon file for bankruptcy.

Santander Consumer USA did not ask me for any income information upon getting the car. While I thought I could keep up, I am not always clearly sorting things out. I have a disability that includes both physical and mental health issues and affects my comprehension, focus, and emotional regulation.

I don't know what to do. I have asked them for another extension and they say no. I am under water by at least $4000 on this vehicle.  And my rent is now unpaid because the car takes everything. I can't give it back because it was sold to me with a lean on it. I don't know why or how, but the state would not even allow me to register it. I just can't afford all of this abd I really need help.

Thanks for reading. If I need to submit a new claim I guess I could do that.

Thank you

C Lynn Brown
lynnmusik@gmail.com
314-599-1753
performersinc.org
https://www.facebook.com/LynnMusik28


--
**C Lynn Brown**
performersinc.org
Linkedin
Facebook

**EXHIBIT 1**



---------- Forwarded message ---------
From: **Crystal B** <crysb77@gmail.com>
Date: Thu, Nov 30, 2023 at 10:26 AM
Subject: Account 25328350 c Brown
To: <eorequest@santanderconsumerusa.com>

Thank you for offering to help resolve the issue of my Honda Pilot, 2016 and the illegal sale resulting in a lien placed on the car that even Santander is unaware of. Just to follow up with my discussion on 11/29/23 with agent #796558 I was to send proof of the insurance I paid for the car in addition to proof that I had no income provided at the time of purchase. Agent referenced above was to follow up with Missouri DMV to obtain proof that there was already a lien on the car at the time of purchase. Since Frank Leta did not disclose this to Santander it is something she also offered to resolve so that I don't have to continue getting lied to here as a disabled consumer.

Attached are the insurance bills paid totaling over $3500 all null and void because the state of Missouri would not allow me to register the vehicle for 2 years. I believe I still owe the insurance company about $185 and I will forward that last bill to Santander. I received tickets every time the car was parked on the street and we do not have off street parking available at my home. I have paid all of them and have not asked Santander to reimburse me for anything.

As discussed yesterday we will be proceeding with a canceling of the contract that will include removing any and all derogatory credit information that is currently impacting me so harshly that it has left me unable to provide stable housing for my boys. I need the negative scars gone so I can begin to have a chance at stable housing again. As I mentioned yesterday, the purchase agreement included my partners income and they used my credit to secure the loan. Only my information ended up on the agreement and only I was impacted on my credit. When he continued being abusive I had to remain with him because this car crippled me so much it caused a whole life downward spiral including me going back to work prematurely and risking losing my disability as a result.

I am going to bcc my financial coach and her recommended attorney in case we decide this is more of a lawsuit situation. Hopefully it is a simple resolve and I can return the car without a repossession or any negative impact on my credit score any longer.

I will attach proof of no income at the time of purchase to another email.

**EXHIBIT 1**

Thank you

Crystal Brown

Sent from my iPhone

--
**C Lynn Brown**
performersinc.org
Linkedin
Facebook

**EXHIBIT 1**



---------- Forwarded message ---------
From: **Crystal B** <crysb77@gmail.com>
Date: Thu, Nov 30, 2023 at 10:37 AM
Subject: 25328350
To: <eorequest@santanderconsumerusa.com>

I have attached my benefit verification letter from social security received in November 2022 when I was officially considered disabled. I waited from 2019 to 2022 for this approval. During the wait period I did not have income other than what my partner at the time provided. This was discussed upon purchase , but only one name ended up on the loan agreement. It was my credit that secured the loan. Now 2 years after I have made payments and every effort to continue paying even despite my inability to register the car and countless hours needed to investigate and even find out what Missouri DMV was taking about and why they wouldn't allow me to register a car.
I'm have paid off several auto loans in my long history, and never have I ever had an issue registering a vehicle. This was expressed to Santander in 2021 then again in 2022. When I finally went in this year to request one last time I managed to squeeze additional information out of her that the lien is through Bank of America.

As agent ID number 796558 mentioned yesterday Santander continues to remain unaware of this lien, despite my numerous attempts to inform them myself that something was not right there . She then asked if I called Bank of America. I simply believe I have done too much, and at this point I just want to erase the car from my memory as it has caused me 2 years of financial and mental stress.

Thank you for offering to contact the DMV and to cancel the contract. I look forward to also hearing about how Santander will also prevent my credit from continuing to be scarred.

Is it possible to request that all further communication take place in writing? I am disabled once again and it is just easier for me given my cognitive issues associated with the conditions.

Thank you again for your time and understanding.

This is sent directly from my SSI online so please let me know if I need to send another way.

Crystal

blob:https://secure.ssa.gov/5bc9c9b6-7308-413b-a765-839aa845c1de

**EXHIBIT 1**

Sent from my iPhone

--
**C Lynn Brown**
performersinc.org
Linkedin
Facebook

**EXHIBIT 1**



## STATE OF MISSOURI
## CERTIFICATE OF TITLE

05301EA853     ORIGINAL     TITLE NUMBER **TJM18135**

| VEHICLE IDENTIFICATION NUMBER | YEAR 2016 | MAKE HOND | BODY STYLE UTILI |

| HP 28 | PREVIOUS STATE | MILEAGE AT TIME OF TRANSFER 13* | TAX PAID | PURCHASE DATE 11/28/2015 | DATE ISSUED 12/24/2015 |

IN ) OWNER

MAIL TO

VEHICLE SUBJECT TO FOLLOWING LIEN(S)

FIRST LIEN
**BANK OF AMERICA NA**
**PO BOX 2759**
**JACKSONVILLE**
**FL 32203**

LIEN DATE
**11/28/2015**

Lien release - To release any lien shown on the face of this title, the lienholder must complete a notarized Lien Release (DOR-1800) to be attached to this title before the purchaser applies for a Certificate of Title.

SECOND LIEN     LIEN DATE

Any person who knowingly and intentionally submits a separate document releasing a lien of another without authority to do so shall be guilty of a class C felony. (301.640 RSMo)

**BUYER ON REVERSE SIDE MUST TITLE IN 30 DAYS TO AVOID PENALTY**

MILEAGE STATEMENT
**ACTUAL MILEAGE.**
**ANNUAL ODOMETER UPDATES MAY BE AVAILABLE FROM THE DEPARTMENT OF REVENUE.**
**EFFECTIVE 1/1/06 YOU MUST SUBMIT A NOTICE OF SALE TO THE DEPARTMENT OF REVENUE WITHIN 30 DAYS OF SELLING THIS VEHICLE.**

19393277     **DIRECTOR OF REVENUE** DOR-387 (04/2015)

ANY ALTERATION OR ERASURE VOIDS THIS TITLE

---

MUST BE COMPLETED AT TIME OF SALE    NOTICE OF SALE/TRANSFER    SEE INSTRUCTIONS ON REVERSE

| PURCHASER NAME LAST, FIRST (REQUIRED) (PRINTED) | DOR USE ONLY - CODE |

ADDRESS (REQUIRED)

| CITY (REQUIRED) | STATE (REQ) | ZIP CODE (REQUIRED) | COUNTY |

| DATE OF SALE | NET PRICE |

| SIGNATURE OF PURCHASER | DRIVER LICENSE NUMBER OF PURCHASER | DATE OF BIRTH OF PURCHASER |

| BODY | YEAR 2016 | MAKE HOND | VEHICLE IDENTIFICATION NUMBER | TITLE NUMBER **TJM18135** |

| SIGNATURE OF SELLER | DEALER NUMBER | PRINTED NAME OF SELLER |

**EXHIBIT 2**     SELLER MUST SUBMIT TO DEPARTMENT OF REVENUE, SEE REVERSE SIDE.     DOR-6049A (04/2015)

19393277

**INSTRUCTIONS:** Federal law (and state law, if applicable) requires that all sellers state the mileage in connection with the transfer of ownership. Failing to complete or providing a false statement may result in fines and/or imprisonment.

**ALL owners (sellers)** on the face of the title and purchaser must sign and hand print their names after the purchaser(s) name; lienholder, sale price, trade-in (if applicable) no brake, date of sale, and mileage spaces are completed. If purchaser/seller is an agent/officer of a firm, record of actual position after printed name, if assigning a junking certificate, the odometer disclosure, seller's printed name(s), and purchaser(s) printed name and signature are not required.

**WARNING:** Alterations, erasures or mistreatment will void this title/certificate.

**ASSIGNMENT OF TITLE:** I/We hereby assign and warrant certificate of title of the vehicle described on the front of this certificate of title subject to the following lien(s) or encumbrance(s); if any, and none other. We further certify the accuracy of the sale price and mileage as specified below, when applicable.

**LIENHOLDERS:** Recording your lien below does not perfect your lien. (See governmotion/lendeall for lien perfection requirements.)

**State Title Florida**

| | PURCHASER(S) NAME (PRINTED OR TYPED) | | | SALE PRICE $ |
|---|---|---|---|---|
| **ASSIGNMENT** | ADDRESS **500 Auto Mall Drive** | | | TRADE-IN $ |
| | DATE OF SALE **O'Fallon, MO 63368** | | NUMBER OF SELLER | NET PRICE $ |
| | ODOMETER READING (NO TENTHS) 0008 | | | MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS / MILEAGE READING IS NOT ACTUAL |
| | SIGNATURE OF ALL PURCHASER(S) | | SIGNATURE OF ALL SELLER(S) | |
| | HAND PRINTED NAME(S) BY PURCHASER(S) (AGENT/POSITION) Cara Brinner mgr | | HAND PRINTED NAME(S) BY SELLER(S) (AGENT/POSITION) Sean Roemer / Cara Roemer | |

| | PURCHASER(S) NAME (PRINTED OR TYPED) Crystal Brown | | | SALE PRICE $ |
|---|---|---|---|---|
| **REASSIGNMENT BY REGISTERED DEALER** | ADDRESS | | | TRADE-IN $ |
| | DATE OF SALE | MODEL | DEALER NUMBER OF SELLER | NET PRICE $ |
| | ODOMETER READING (NO TENTHS) 00882 | | | MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS / MILEAGE READING IS NOT ACTUAL |
| | SIGNATURE OF ALL PURCHASER(S) | | SIGNATURE OF ALL SELLER(S) | |
| | HAND PRINTED NAME(S) BY PURCHASER(S) (AGENT/POSITION) Crystal Brown | | HAND PRINTED NAME(S) BY SELLER(S) (AGENT/POSITION) Cara Brinner mgr | |

**THE REASSIGNMENTS BELOW CAN NOT BE USED FOR A SALVAGE CERTIFICATE OF TITLE.**

| | PURCHASER(S) NAME (PRINTED OR TYPED) | | | SALE PRICE $ |
|---|---|---|---|---|
| **REASSIGNMENT BY REGISTERED DEALER** | ADDRESS | | | TRADE-IN $ |
| | DATE OF SALE | MODEL | DEALER NUMBER OF SELLER | NET PRICE $ |
| | ODOMETER READING (NO TENTHS) | | | MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS / MILEAGE READING IS NOT ACTUAL |
| | SIGNATURE OF ALL PURCHASER(S) | | SIGNATURE OF ALL SELLER(S) | |
| | HAND PRINTED NAME(S) BY PURCHASER(S) (AGENT/POSITION) | | HAND PRINTED NAME(S) BY SELLER(S) (AGENT/POSITION) | |

| | PURCHASER(S) NAME (PRINTED OR TYPED) | | | SALE PRICE $ |
|---|---|---|---|---|
| **REASSIGNMENT BY REGISTERED DEALER** | ADDRESS | | | TRADE-IN $ |
| | DATE OF SALE | MODEL | DEALER NUMBER OF SELLER | NET PRICE $ |
| | ODOMETER READING (NO TENTHS) | | | MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS / MILEAGE READING IS NOT ACTUAL |
| | SIGNATURE OF ALL PURCHASER(S) | | SIGNATURE OF ALL SELLER(S) | |
| | HAND PRINTED NAME(S) BY PURCHASER(S) (AGENT/POSITION) | | HAND PRINTED NAME(S) BY SELLER(S) (AGENT/POSITION) | |

| | FIRST LIENHOLDER NAME (PRINTED OR TYPED) DOES NOT APPLY TO JUNKING CERTIFICATES Santander Consumer USA Inc. | | DATE OF LIEN 7/3/2021 |
|---|---|---|---|
| **LIENHOLDER INFORMATION** | FIRST LIENHOLDER ADDRESS PO Box 961288  Ft. Worth Tx 76161 | | |
| | SECOND LIENHOLDER NAME (PRINTED OR TYPED) | | DATE OF LIEN |
| | SECOND LIENHOLDER ADDRESS | | |

DOR-387 (04/2015)

## NOTICE OF SALE/TRANSFER
### DO NOT COMPLETE FOR SALVAGE CERTIFICATES OF TITLE OR JUNKING CERTIFICATES

This Notice of Sale/Transfer must be completed and submitted by the seller **within 30 days of sale** to a contract office or to the **Department of Revenue, Motor Vehicle Bureau, P.O. Box 3050, Jefferson City, Missouri 65105-3050. DO NOT** report sales to: licensed vehicle dealers, out-of-state purchasers, beneficiaries named in a trust, transfer on death beneficiaries or insurance companies as a result of an insurance claim. Completion of this form does not constitute an assignment or release of any interest in the vehicle. Make prompt notification to help protect yourself from possible liability. Any seller who fails to submit this notice is guilty of an infraction. If the failure to submit this notice was done to assist the purchaser avoid applying for a title, paying applicable registration fees or other fraudulent purposes, the seller shall be guilty of a class C misdemeanor. Knowingly submitting false information about the sale of a vehicle is a class C misdemeanor.

**EXHIBIT 2**

DOR-5045A (04/2015)

Electronically Filed
Kinnis Williams, Sr.
Circuit Clerk
Nora McDaniel
24LA0123
St. Clair County
1/24/2024 2:09 PM
26107040

IN THE CIRCUIT COURT OF ST. CLAIR COUNTY
STATE OF ILLINOIS

| | |
|---|---|
| CRYSTAL BROWN, on behalf of herself and those similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 24LA0123 _____ |
| SANTANDER CONSUMER USA INC. Serve: C T CORPORATION SYSTEM 208 SO LASALLE ST, SUITE 814 CHICAGO, IL 60604-1101 | ) ) ) ) ) |

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

COMES NOW Plaintiff Crystal Brown, and for her motion for preliminary injunction, states:

## INTRODUCTION

1.    Santander is knowingly pursuing payment on debts tainted by a breach of the warranty of title. *See* Uniform Commercial Code § 2-312. Ms. Brown—and many consumers like her—purchased vehicles from car dealerships that partner with Santander for financing. These dealerships sold Brown and many other consumers vehicles that had *preexisting liens on them.*

2.    As a result, these consumers were unable to properly register the vehicles in the state in which they live. They could not get proper title. They did not get the benefit of the bargain: a car they *owned.* Nevertheless, Santander wants its money. It harangues its customers, like Ms. Brown, to make payments on loans for vehicles sold without good title.

3.    Santander's legal violations trigger liability under various state consumer protection statutes, such as the Missouri Merchandising Practices Act ("MMPA") in the case of Ms. Brown specifically. *See* RSMo. § 407.010, *et seq.* Under these laws, consumers may seek and obtain injunctive relief against conduct prohibited thereunder. *See, e.g.,* RSMO § 407.025.5.

4.      If Santander is not ordered to do something to fix this problem, thousands of people may be unnecessarily and irreparably thrust into financial catastrophe. This is no trifling matter. Financial stress is widely known to contribute to divorce, depression, and suicide. Real human beings need protection now from Santander's abusive practices. Ms. Brown implores the Court to take action by entering a preliminary injunction against Santander, outlined more fully below.

## FACTUAL BACKGROUND

5.      The factual background set forth below is supported by the affidavit of Plaintiff Crystal Brown, which is attached hereto as Exhibit 1 and incorporated by reference.

6.      In the summer of 2021, Crystal Brown wanted to trade in her 2006 Hyundai Santa Fe and purchase a different car. She had clear title to this Hyundai Santa Fe. In looking for a different car, she went to the Frank Leta Honda dealership in O'Fallon, Missouri. (Ex. 1, ¶ 2).

7.      On July 3, 2021, Brown purchased a 2016 Honda Pilot from Frank Leta Honda. As part of that transaction, she traded in her Santa Fe. She didn't have all the cash needed to purchase the Honda Pilot, so she took out a loan for the purchase. That loan was assigned to Santander Consumer USA ("Santander"). (*See* Exhibit 2, Retail Installment Contract).

8.      After getting the Honda Pilot, Brown began making payments on the loan to Santander. To date, she has made payments in excess of $9,000.00 to Santander on this loan. (Ex. 1, ¶ 4).

9.      Nobody from Frank Leta Honda or Santander told Brown that the Honda Pilot had a preexisting lien on it from another company. She found this out when she tried to register the Honda Pilot with the state of Missouri. (Ex. 1, ¶ 5).

10.     Brown informed employees of Frank Leta Honda that the Missouri Department of Revenue would not register the Honda Pilot because of a preexisting lien. Those employees

2

acknowledged they had done something wrong when they sold her the vehicle with a lien on it, but didn't offer to help me in any way. Frank Leta's representative said: "huh, it looks like we sold the car with a lien on it which we aren't really supposed to do." This person transferred Ms. Brown to a supposed "finance manager," for whom she left a message. (Ex. 1, ¶ 6)

11.     After attempting to register the vehicle multiple times, Brown learned that the preexisting lien on the Honda Pilot was held by Bank of America. (Ex. 1, ¶ 7)

12.     Brown also informed Santander on multiple occasions that the vehicle had a preexisting lien on it, making it so she could not register the vehicle and legally drive it on public roadways. Obviously, that was the entire purpose of buying the vehicle in the first place, so there were occasions in which Brown attempted to drive it out of necessity. She was pulled over and given traffic citations for driving a vehicle without proper registration for which she had to make payments. (Ex. 1, ¶ 8)

13.     At some point it became financially untenable for Brown to continue making payments on a loan for a vehicle she did not actually own. Brown told Santander about this problem over and over again, and eventually demanded they give her an email address to which she could send written communications so that there was a written record that she told them about this problem. (Ex. 1, ¶ 9)

14.     To summarize those emails:

   a.   On April 27, 2023, Ms. Brown sent an email to Santander. In that email, she informed Santander of the financial distress being caused by this invalid auto loan, and noted: "*I can't give [the vehicle] back because it was sold to me with a lean [sic] on it*. I don't know why or how, but the state would not even allow me to register it. *I just can't afford all of this abd [sic] I really need help*."

   b.   On November 30, 2023, at 10:26 AM, Ms. Brown emailed Santander again. In that email, she referenced a telephone conversation she had with a Santander employee, stating: "Thank you for offering to help resolve the issue of my Honda Pilot, 2016 *and the illegal sale resulting in a lien placed on the car* that even Santander is

3

unaware of." It appears Santander misrepresented that it did not know about the preexisting lien despite her prior email and numerous phone calls to Santander on that subject. Ms. Brown went on to say that "agent #796558" told her that the agent "was to follow up with the Missouri DMV to obtain proof that there was already a lien on the car at the time of purchase. Since Frank Leta did not disclose this to Santander it is something she also offered to resolve so that I don't have to continue getting lied to here as a disabled consumer." Desperate for the situation to end so she could provide a stable environment for her children, Ms. Brown also stated: "*As discussed yesterday we will be proceeding with a canceling of the contract that will include removing any and all derogatory credit information that is currently impacting me so harshly that it has left me unable to provide stable housing for my boys. I need the negative scars gone so I can begin to have a chance at stable housing again.*" She then proceeded to tell Santander she was considering getting a lawyer involved, but "hopefully it is a simple resolve and I can return the car without a repossession or any negative impact on my credit score any longer."

    c. On November 30, 2023, at 10:37 AM, Ms. Brown sent another email to Santander providing a benefit letter from the Social Security Administration verifying she had a disability. With respect to the invalid RISC, she stated: "Now 2 years after I have made payments and every effort to continue paying even despite my inability to register the car and countless hours needed to investigate and even find out what Missouri DMV was taking about and why they wouldn't allow me to register a car. I'm have [sic] paid off several auto loans in my long history, and never have I ever had an issue registering a vehicle. *This was expressed to Santander in 2021 then again in 2022.* When I finally went in this year to request one last time I managed to squeeze additional information out of her that the lien is through Bank of America." Obviously frustrated with Santander's continued misrepresentations that they don't know about the lien issue, Ms. Brown stated: "As agent ID number 796558 mentioned yesterday Santander continues to remain unaware of this lien, despite my numerous attempts to inform them myself that something was not right there."

(Ex 1, ¶ 10) (emphasis added).

    15.    The Santander employees with whom Brown spoke apparently misrepresented that Santander was not aware of the situation involving the preexisting lien and misrepresented they would resolve the situation. (Ex. 1, ¶ 11). Instead, Santander continues to this very day calling Brown incessantly, demanding she make payments on a loan for a vehicle to which she cannot get proper title. (Ex. 1, ¶ 12).

4

16.     Brown has and will continue to incur damages as result. She does not truly have full ownership over a vehicle she purchased. She lost access to the Hyundai Santa Fe, over which she had proper title, due to a trade-in made in connection with the purchase of the Honda Pilot. She has paid property taxes, insurance premiums, and maintenance costs on the Honda Pilot. (Ex. 1, ¶ 12).

17.     Meanwhile, her creditworthiness has been harmed by Santander's unreasonable insistence that Brown make payments on a loan for a vehicle that never really became hers, through no fault of her own. (Ex. 1, ¶ 12).

18.     Plaintiff has filed a class action complaint against Santander seeking damages and injunctive relief to stop this illegal and incredibly harmful course of conduct. Santander is letting its customers drift in the wind while they struggle to navigate a bureaucratic catch-22. Brown and the putative class did not get proper title to their vehicles, yet Santander insists upon getting payments. A preliminary injunction is necessary to protect consumers from Santander's abusive practices.

## ARGUMENT

19.     "The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits of a cause." *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 156 (1992). In preserving the status quo, the preliminary injunction seeks to prevent a threatened wrong or a continuing injury. *Limestone Dev. Corp. v. Vill. of Lemont*, 284 Ill. App. 3d 848, 853 (1996). A court of appeals reviews the grant of a preliminary injunction for abuse of discretion. *Williams Bros. Const. v. Pub. Bldg. Comm'n of Kane Cnty.*, 243 Ill. App. 3d 949, 955 (1993).

20.     Typically, to obtain a preliminary injunction, a plaintiff must demonstrate that: (1) there is a clearly ascertainable right that needs protection; (2) he or she will suffer irreparable harm

without the protection of an injunction; (3) there is no adequate remedy at law for his or her injury; and (4) there is a substantial likelihood of success on the merits in the underlying action. *In re Marriage of Patel*, 2022 IL App (1st) 211650, ¶ 25.

21.    The standard is different, however, when there is a *statutory* basis for obtaining an injunction. "In Illinois, 'where a statute expressly authorizes injunctive relief to enforce the provisions of the statute, the general rules of equity requiring a showing of a lack of an adequate remedy at law and irreparable injury need not be shown.'" *Cnty. of Du Page v. Gavrilos*, 359 Ill. App. 3d 629, 634, 834 N.E.2d 643, 648 (2005) (quoting *People v. Fiorini*, 143 Ill.2d 318, 346, 158 Ill.Dec. 499, 574 N.E.2d 612 (1991)). Likewise, when a statute permits injunctive relief, "it is not necessary to plead or establish the traditional equitable elements necessary to obtain an injunction," such as the typical balance of equities analysis. *Id.*

22.    Ms. Brown is seeking an injunction under the MMPA, RSMo. § 407.025.5, and various consumer protection statutes under which injunctive relief is permitted.[1] Thus, she need only (1) a clear and ascertainable right that needs protection and (2) likelihood of success on the merits. Both of these elements are satisfied.

---

[1] The consumer protection statutes are: Ala.Code 1975 § 8-19-10 (Alabama); AS 45.50.471-45.50.561 (Alaska); A.R.S. § § 44-1521 to 44-1534 (Arizona); A.C.A. § 4-88-107 (Arkansas); Cal.Civ.Code § 1750, *et seq.* (California); C.R.S.A. § 6-1-101, *et seq.* (Colorado); C.G.S.A. § 42-110b *et seq.* (Connecticut); 6 Del.C. § 2513 *et seq.* (Delaware); F.S.A. § 501.204 (Florida); GA ST § 10-1-393 (Georgia); HRS § 481A-1 (Hawaii); 815 ILCS 505/10a (Illinois); IC 24-5-0.5-4 (Indiana); I.C.A. § 714H.5 (Iowa); K.S.A. 50-634 (Kansas); KRS § 367.220 (Kentucky); LSA-R.S. 51:1409 (Louisiana); 5 M.R.S.A. § 213 (Maine); MD Code, Commercial Law, § 13-408 (Maryland); M.G.L.A. 93A § 9 (Massachusetts); M.C.L.A. 445.911 (Michigan); MSA § 325F.69 and MSA § 8.31 (Minnesota); RSMo. § 407.025 (Missouri); MCA 30-14-133 (Montana); Neb.Rev.St. § 59-1609 (Nebraska); N.R.S. 41.600 (Nevada); N.H. Rev. Stat. § 358-A:10 (New Hampshire); N.J.S.A. 56:8-19 (New Jersey – treble damages); N.M.S.A. 1978, § 57-12-10 (New Mexico); N.Y. Gen. Bus. Law § 349 (New York); N.C.G.S.A. § 75-16 (North Carolina – treble damages); NDCC, 51-15-09 (North Dakota – treble damages); R.C. § 1345.09 (Ohio); 15 Okl.St.Ann. § 753 (Oklahoma); O.R.S. § 646.638 (Oregon); 73 P.S. § 201-9.2 (Pennsylvania); RI ST § 6-13.1-5.2 (Rhode Island); SC ST § 39-5-140 (South Carolina); SDCL § 37-24-31 (South Dakota); T. C. A. § 47-18-109 (Tennessee); V.T.C.A., Bus. & C. § 17.50 (Texas); U.C.A. 1953 § 13-11-19 (Utah); 9 V.S.A. § 2461 (Vermont – treble damages); RCWA 19.86.090 (Washington – treble damages); W. Va. Code, § 46A-6-106 (West Virginia); W.S.A. 425.301-425.309 (Wisconsin); W.S.1977 § 40-12-108 (Wyoming).

23.     Injunctive relief is available to stop abusive debt collection practices where, as here, a consumer protection statute provides for injunctive relief. This is exemplified by the decision by the U.S. District Court for the Northern District of California in *Irwin v. Mascott.* In that case, the plaintiff requested an injunction against violations of the Federal Fair Debt Collection Practices Act, but relied on California's consumer protection statute as the basis for injunctive relief. *Irwin v. Mascott*, 112 F. Supp. 2d 937, 964 (N.D. Cal. 2000). The consumer took this approach because injunctive relief is not typically available under the FDCPA itself. The court agreed with the consumer and entered the injunction, reasoning that the injunctive relief afforded under the consumer protection statute "protects the consumer by stopping the abuse debt collector in its tracks." *Id.*

24.     Similarly, here, Santander's abusive debt collection practices violate state consumer protection laws and can be enjoined under these consumer protection statutes. There is (1) a clear and ascertainable right needing protection over which (2) Brown is likely to succeed on the merits. Thus, a preliminary injunction is an appropriate form of relief.

25.     ***Clear and ascertainable right needing protection.*** The warranty of title, set forth in UCC 2-312, is well-established in all 50 states of the union. *Rockdale Cable T.V. Co. v. Spadora*, 97 Ill. App. 3d 754, 757 (1981) ("In the sale of goods there is a warranty given by the seller that the title conveyed shall be good."). The purpose of the warranty of title "is to ensure that a buyer will not be exposed to a lawsuit in order to protect [her] title." UCC § 2-213, Official Comment 1 (e.g., 810 ILCS 5/2-312, cmt. 1). The warranty of title cannot be easily disclaimed. "Very precise and unambiguous language must be used to exclude a warranty so basic to the sale of goods as is title." *Kel-Keef Enterprises, Inc. v. Quality Components Corp.*, 316 Ill. App. 3d 998, 1014 (2000).

7

26.     "If a seller sells a stolen car or one that is burdened with an unsatisfied perfected

security interest, he has almost certainly breached section 2–312 and will be liable in damages to

the buyer." *Mercer v. Braziel*, 746 P.2d 702, 704 (OK 1987) (quoting White and Summers, Uniform

Commercial Code, § 9–10, p. 361). "Likewise, If the object of a sale is subject to a valid security

interest or a valid claim of title in a third person, clearly the warranty in 2–312 has been breached,

and the seller is liable in damages." *Id. See also Ricklefs v. Clemens*, 216 Kan. 128, 531 P.2d 94

(1975) (holding seller breached warranty of title for sale of stolen vehicle even though seller was

innocent purchaser).

27.     The purpose of the UCC is to "make uniform the law among the various

jurisdictions." UCC 1-103(a)(3). Under similar circumstances involving uniform statutes, the

Illinois Supreme Court has stated that "judicial opinions from other jurisdiction are given greater

than usual deference." *Garver v. Ferguson*, 76 Ill.2d 1, 8 (1979). Thus, these cases directly

addressing the situation at bar are highly persuasive when considering whether Brown has a "clear

and ascertainable right" needing protection.

28.     Here, Brown was sold a vehicle with a preexisting lien, which prevented her from

obtaining proper title. All the while, Santander has demanded she keep making payments on a

contract for which Brown didn't get the benefit of the bargain. This violates the warranty of title

under UCC 2-312. This type of activity also violates state consumer protection laws like the

MMPA. *See, e.g., Antle v. Reynolds*, 15 S.W.3d 762 (Mo. Ct. App. 2000) (failure to give proper

certificate of ownership to buyer was actionable under MMPA); *Peel v. Credit Acceptance Corp.*,

408 S.W.3d 191 (Mo. Ct. App. 2013) (affirming jury verdict in favor of buyer not given proper

certificate of title). Further, Missouri regulations define an "unfair practice" under the MMPA as

any practice which "offends any public policy as it has been established by the Constitution,

statutes or common law of this state…" that "presents a risk of, or causes, substantial injury to consumers." 15 CSR 60-8.020. The breach of the warranty of title clearly violates the public policy of Missouri and other states, and subjected Brown, and other consumers like her, to substantial injury.

29.       Thus, Brown has a "clear and ascertainable right"—in the form of her rights under the warranty of title and correlative rights under the MMPA—that merits protection. The putative class members have these same rights, as UCC 2-312's warranty of title has been adopted by all 50 states. To preserve the status quo and prevent Santander from causing further harm, a preliminary injunction is necessary.

30.       ***Likelihood of success.*** Likelihood of success on the merits does *not* mean certainty that the plaintiff will win. That is, "the movant need not make out a case which would necessarily require relief at a final hearing." *Williams Bros.*, 243 Ill. App. 3d at 956 (1993). "Rather, a party need only raise a fair question as to the existence of the rights claimed, [and] lead the court to believe that it will probably be entitled to the relief sought if the proof sustains the allegations." *Id.* (quoting *Armstrong v. Crystal Lake Park Dist.*, 139 Ill. App. 3d 991, 997 (1985)).

31.       As outlined in the previous section, Santander—as assignee of Frank Leta—clearly violated the warranty of title. After being informed of this, Santander persisted in demanding improper payments from Brown and consumers like her. Brown's credit and that of the putative class members has likely been seriously harmed while dealing with constant harassing phone calls demanding payment for invalid debts. This all stems from the purchase of vehicles Brown and the class members aren't able to legally drive on the roadways.

32.       Brown has clearly raised a "fair question as to the existence of the rights claimed," and she probably will be entitled to relief considering the weight of authority finding that similar

conduct violates the warranty of title. Likewise, as *Irwin* held, when a violation of one statute also results in the violation of a consumer protection statute that permits injunctive relief, an injunction as to the offending conduct is warranted. *Irwin* provides a roadmap for this Court to enter a preliminary injunction against Santander to protect consumers from further harm. Thus, the "likelihood of success" element has been satisfied. A preliminary injunction is warranted.

## **CONCLUSION**

WHEREFORE, Plaintiff Crystal Brown respectfully requests the Court enter a preliminary injunction against Defendant Santander required Santander to:

1.    Cease accepting payments on any retail installment contract in which the borrower was sold a vehicle with a preexisting lien on it;

2.    Cease seeking, requesting, demanding, or attempting to obtain in any way payments on any retail installment contract in which the borrower was sold a vehicle with a preexisting lien on it;

3.    Cease attempting to repossess any vehicles on retail installment contracts in which the borrower was sold a vehicle with a preexisting lien on it;

4.    Dismiss all lawsuits brought against borrowers seeking to enforce any retail installment contract in which the borrower was sold a vehicle with a preexisting lien on it;

5.    Notify any subsequent purchasers of any retail installment contract in which the borrower was sold a vehicle with a preexisting lien on it of such injunction and to buy back any such loans from any subsequent purchaser of the loan instrument if buy backs are permitted by the instrument through which the loan was sold to the subsequent purchaser;

6.      Delete all trade lines and other negative information reported to credit reporting agencies by Santander with respect to all loans on retail installment contracts in which the borrower was sold a vehicle with a preexisting lien on it;

7.      Diligently take all steps to identify borrowers that were sold a vehicle with a preexisting lien on it in order to comply with the foregoing; and

8.      Such other relief as the Court considers just.

Respectfully Submitted,
SWMW LAW, LLC

By:     */s/ Benjamin S. McIntosh*
Benjamin S. McIntosh, #6325759
ben.mcintosh@swmwlaw.com
Attorneys for Defendant
701 Market Street, Suite 1000
St. Louis, MO 63101
(314) 480-5180
(314) 932-1566 – Facsimile

## PROOF OF SERVICE

The undersigned certifies that the foregoing is/will be personally served on Defendant's registered agent in the State of Illinois along with the Complaint and Summons.

*/s/ Benjamin S. McIntosh*

11

IN THE CIRCUIT COURT OF ST. CLAIR COUNTY
STATE OF ILLINOIS

CRYSTAL BROWN, on behalf of herself )
and those similarly situated, )
)
      Plaintiff, )
)
v. )    Case No. _____
)
SANTANDER CONSUMER USA INC. )

### AFFIDAVIT OF CRYSTAL BROWN IN CONNECTION
### WITH HER MOTION FOR PRELIMINARY INJUNCTION

I, Crystal Brown, being of sound mind and over the age of twenty-one years, state:

1.      I have personal knowledge of the information discussed in this affidavit and am competent to testify thereto.

2.      In the summer of 2021, I wanted to trade in my 2006 Hyundai Santa Fe and purchase a different car. I had clear title to this Hyundai Santa Fe. In looking for a different car, I went to the Frank Leta Honda dealership in O'Fallon, Missouri.

3.      On July 3, 2021, I purchased a 2016 Honda Pilot from Frank Leta Honda. As part of that transaction, I traded in my Santa Fe. I didn't have all the cash needed to purchase the Honda Pilot, so I took out a loan for the purchase. It is my understanding that the loan was assigned to Santander Consumer USA ("Santander").

4.      After getting the Honda Pilot, I began making payments on the loan to Santander. To date, I have made payments in excess of $9,000.00 to Santander on this loan.

5.      Nobody from Frank Leta Honda or Santander told me that the Honda Pilot had a preexisting lien on it from another company. I found this out when I tried to register the Honda Pilot with the state of Missouri.

### EXHIBIT 1

6.     I informed employees of Frank Leta Honda that the Missouri Department of Revenue would not register the Honda Pilot because of a preexisting lien. Those employees acknowledged they had done something wrong when they sold me the vehicle with a lien on it, but didn't offer to help me in any way. Frank Leta's representative said: "huh, it looks like we sold the car with a lien on it which we aren't really supposed to do." This person transferred me to a supposed "finance manager," for whom I left a message. He never called me back.

7.     After attempting to register the vehicle multiple times, I learned that the preexisting lien on the Honda Pilot was held by Bank of America. A true and accurate copy of the Certificate of Title showing that Bank of America has a lien on the Honda Pilot is attached hereto as Exhibit A.

8.     I also informed Santander on multiple occasions that the vehicle had a preexisting lien on it, making it so I could not register the vehicle and legally drive it on public roadways. Obviously, that was the entire purpose of buying the vehicle in the first place, so there were occasions in which I attempted to drive it out of necessity. I was pulled over and given traffic citations for driving a vehicle without proper registration for which I had to make payments.

9.     At some point it became untenable for me to continue making payments on a loan for a vehicle I did not actually own. I told Santander about this problem over and over again, and eventually demanded they give me an email address to which I could send written communications so that there was a written record that I told them about this problem. True and accurate copies of the emails I sent to Santander are attached hereto as Exhibit B.

10.     To summarize those emails:

   a. On April 27, 2023, I sent an email to Santander. In that email, I informed Santander of the financial distress being caused by this invalid auto loan, and noted: "I can't give [the vehicle] back because it was sold to me with a lean [sic] on it. I don't

2

**EXHIBIT 1**

know why or how, but the state would not even allow me to register it. I just can't
afford all of this abd [sic] I really need help."

b.  On November 30, 2023, at 10:26 AM, I emailed Santander again. In that email, I
referenced a telephone conversation I had with a Santander employee, stating:
"Thank you for offering to help resolve the issue of my Honda Pilot, 2016 and the
illegal sale resulting in a lien placed on the car that even Santander is unaware of."
It appears Santander misrepresented that it did not know about the preexisting lien
despite my prior email and numerous phone calls to Santander on that subject. I
went on to say that "agent #796558" told me that the agent "was to follow up with
the Missouri DMV to obtain proof that there was already a lien on the car at the
time of purchase. Since Frank Leta did not disclose this to Santander it is something
she also offered to resolve so that I don't have to continue getting lied to here as a
disabled consumer." Desperate for the situation to end so I could provide a stable
environment for my children, I also stated: "As discussed yesterday we will be
proceeding with a canceling of the contract that will include removing any and all
derogatory credit information that is currently impacting me so harshly that it has
left me unable to provide stable housing for my boys. I need the negative scars
gone so I can begin to have a chance at stable housing again." I then proceeded to
tell Santander I was considering getting a lawyer involved, but "hopefully it is a
simple resolve and I can return the car without a repossession or any negative
impact on my credit score any longer."

c.  On November 30, 2023, at 10:37 AM, I sent another email to Santander providing
a benefit letter from the Social Security Administration verifying I had a disability.
With respect to the loan contract, I stated: "Now 2 years after I have made payments
and every effort to continue paying even despite my inability to register the car and
countless hours needed to investigate and even find out what Missouri DMV was
taking about and why they wouldn't allow me to register a car. I'm have [sic] paid
off several auto loans in my long history, and never have I ever had an issue
registering a vehicle. This was expressed to Santander in 2021 then again in 2022.
When I finally went in this year to request one last time I managed to squeeze
additional information out of her that the lien is through Bank of America."
Frustrated with Santander's continued misrepresentations that they don't know
about the lien issue, I stated: "As agent ID number 796558 mentioned yesterday
Santander continues to remain unaware of this lien, despite my numerous attempts
to inform them myself that something was not right there."

(Exhibit 2 hereto).

11.    The Santander employees with whom I spoke apparently misrepresented that
Santander was not aware of the situation involving the preexisting lien (even though I told them

EXHIBIT 1

about it) and also misrepresented they would resolve the situation. Santander's employees lied to me that the contract would be cancelled.

12.     Instead, Santander continues to this very day calling me incessantly, demanding I make payments on a loan for a vehicle that I cannot get proper title to. This situation has been incredibly stressful and emotionally draining for me. I didn't really get the car I paid for. I lost access to a car—the Santa Fe—to which I had proper title. I received and paid traffic citations. I paid property taxes on the Honda Pilot. I paid for insurance on the Honda Pilot. I paid to maintain the Honda Pilot. Meanwhile, my creditworthiness and credit score has been seriously harmed by Santander's insistence that I must pay them for a loan to purchase a vehicle I didn't actually receive. Indeed, this loan appears on my credit report and is the only thing that prevented me from getting financing to purchase a home.

13.     Santander threatened to repossess the vehicle and sue me for the rest of the money. At least one of the payments I made were to prevent Santander from making good on this threat and repossessing the Honda Pilot.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Crystal Brown
Affiant

Sworn to and subscribed before me on the 19TH day of January, 2024, by Crystal Brown.

(SEAL)

ASHLEY THOMAS
Notary Public - Notary Seal
St Louis County - State of Missouri
Commission Number 14614960
My Commission Expires May 12, 2026

_____
Notary Public Signature, State of Missouri

Ashley Thomas
_____
Notary Public Printed Name, State of Missouri

4

**EXHIBIT 1**



## STATE OF MISSOURI
## CERTIFICATE OF TITLE

0530IEA853      ORIGINAL      TITLE NUMBER TJM18135

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | BODY STYLE |
|---|---|---|---|
| | 2016 | HOND | UTILI |

| HP. | PREVIOUS STATE | MILEAGE AT TIME OF TRANSFER | TAX | PURCHASE DATE | DATE ISSUED |
|---|---|---|---|---|---|
| 28 | | 13* | PAID | 11/28/2015 | 12/24/2015 |

TITLE OWNER

MAIL TO

VEHICLE SUBJECT TO FOLLOWING LIEN(S)

FIRST LIEN      LIEN DATE
BANK OF AMERICA NA      11/28/2015
PO BOX 2759
JACKSONVILLE
FL 32203

SECOND LIEN      LIEN DATE

Lien release - To release any lien shown on the face of this title, the lienholder must complete a notarized Lien Release (DOR-4809) to be attached to this title before the purchaser applies for a Certificate of Title.

Any person who knowingly and intentionally submits a separate document releasing a lien of another without authority to do so shall be guilty of a class C felony (301.640 RSMo)

BUYER ON REVERSE SIDE MUST TITLE IN 30 DAYS TO AVOID PENALTY

SELLER'S STATEMENT
*ACTUAL MILEAGE.
ANNUAL ODOMETER UPDATES MAY BE AVAILABLE FROM THE
DEPARTMENT OF REVENUE.
EFFECTIVE 1/1/06 YOU MUST SUBMIT A NOTICE OF SALE
TO THE DEPARTMENT OF REVENUE WITHIN 30 DAYS OF
SELLING THIS VEHICLE.

193932777      DIRECTOR OF REVENUE DOR-387 (04/2015)

ANY ALTERATION OR ERASURE VOIDS THIS TITLE

MUST BE COMPLETED AT TIME OF SALE    NOTICE OF SALE/TRANSFER    SEE INSTRUCTIONS ON REVERSE

| PURCHASER NAME LAST, FIRST (REQUIRED) (PRINTED) | | | DOR USE ONLY CODE |
|---|---|---|---|
| ADDRESS (REQUIRED) | | | |
| CITY (REQUIRED) | STATE (REQ) | ZIP CODE (REQUIRED) COUNTY | |

SIGNATURE OF PURCHASER      DRIVER LICENSE NUMBER OF PURCHASER      DATE OF BIRTH OF PURCHASER

| MOV | YEAR | MAKE | VEHICLE IDENTIFICATION NUMBER | TITLE NUMBER |
|---|---|---|---|---|
| | 2016 | HOND | | TJM18135 |

SIGNATURE OF SELLER      DEALER NUMBER      PRINTED NAME OF SELLER

SELLER MUST SUBMIT TO DEPARTMENT OF REVENUE. SEE REVERSE SIDE.      DOR-S049A (04/2015)

EXHIBIT A

19333277

**INSTRUCTIONS:** Federal law (and state law, if applicable) requires that all sellers state the mileage in connection with the transfer of ownership. Failing to complete or providing a false statement may result in fines and/or imprisonment. ALL owners (sellers) on the face of the title and purchasers must sign and hand print their names after the purchaser(s) name, lienholder, sale price, trade-in. If accurate, the price, date of sale, and mileage spaces are completed. If purchaser/seller is an agent/officer of a firm, record of the lienholder, and seller's printed name(s) and purchaser(s) printed name and signature are not required. **WARNING:** Alterations, erasures or mistreatment will void this state/certificate. **ASSIGNMENT OF TITLE:** I/We hereby assign and warrant certificate of title of the vehicle described on the front of this certificate of title subject to the following lien(s) or encumbrance(s), if any, and none of any. I/We further certify the accuracy of the sale price and mileage, as specified below, when applicable. **LIENHOLDERS:** Recording your lien below does not perfect your lien. See http://dor.mo.gov/motorv/liende/ for lien perfection requirements.

| | | | |
|---|---|---|---|
| **PURCHASER(S) NAME** (PRINTED OR TYPED) | | | |
| **ADDRESS** | 500 Auto Mall Drive | | **TRADE-IN $** |
| **DATE OF SALE** | O'Fallon, MO 63368 | **DATE OF SALE** | **SALE PRICE $** |
| | | | |

THE REASSIGNMENTS BELOW CAN NOT BE USED FOR A SALVAGE CERTIFICATE OF TITLE.

---

## NOTICE OF SALE/TRANSFER
### DO NOT COMPLETE FOR SALVAGE CERTIFICATES OF TITLE OR JUNKING CERTIFICATES

This Notice of Sale/Transfer must be completed and submitted by the seller within 30 days of sale to a contract office or to the Department of Revenue, Motor Vehicle Bureau, P.O. Box 3050, Jefferson City, Missouri 65105-3050. DO NOT report sales to: licensed vehicle dealers, out-of-state purchasers, beneficiaries named in a trust, transfer on death beneficiaries or insurance companies as a result of an insurance claim. Completion of this form does not constitute an assignment or release of any interest in the vehicle. Make prompt notification to help protect yourself from possible liability. Any seller who fails to submit this notice is guilty of an infraction. If the failure to submit this notice was done to assist the purchaser avoid applying for a title, paying applicable registration fees or other fraudulent purposes, the seller shall be guilty of a class C misdemeanor. Knowingly submitting false information about the sale of a vehicle is a class C misdemeanor.

EXHIBIT A



---------- Forwarded message ----------
From: **Crystal B** <crysb77@gmail.com>
Date: Thu, Apr 27, 2023 at 9:13 AM
Subject: Case #91702498
To: <complaints@nctx.bbb.org>


Hello

I am having a hard time following up on this case. I'm continuing to struggle to make $600 monthly in car payments but will need to soon file for bankruptcy.

Santander Consumer USA did not ask me for any income information upon getting the car. While I thought I could keep up, I am not always clearly sorting things out. I have a disability that includes both physical and mental health issues and affects my comprehension, focus, and emotional regulation.

I don't know what to do. I have asked them for another extension and they say no. I am under water by at least $4000 on this vehicle.  And my rent is now unpaid because the car takes everything. I can't give it back because it was sold to me with a lean on it. I don't know why or how, but the state would not even allow me to register it. I just can't afford all of this abd I really need help.

Thanks for reading. If I need to submit a new claim I guess I could do that.

Thank you

C Lynn Brown
lynnmusik@gmail.com
314-599-1753
performersinc.org
https://www.facebook.com/LynnMusik28


--
**C Lynn Brown**
performersinc.org
Linkedin
Facebook

EXHIBIT B



---------- Forwarded message ---------
From: **Crystal B** <crysb77@gmail.com>
Date: Thu, Nov 30, 2023 at 10:26 AM
Subject: Account 25328350 c Brown
To: <eorequest@santanderconsumerusa.com>

Thank you for offering to help resolve the issue of my Honda Pilot, 2016 and the illegal sale
resulting in a lien placed on the car that even Santander is unaware of. Just to follow up with
my discussion on 11/29/23 with agent #796558 I was to send proof of the insurance I paid for
the car in addition to proof that I had no income provided at the time of purchase. Agent
referenced above was to follow up with Missouri DMV to obtain proof that there was already
a lien on the car at the time of purchase. Since Frank Leta did not disclose this to Santander it
is something she also offered to resolve so that I don't have to continue getting lied to here as
a disabled consumer.

Attached are the insurance bills paid totaling over $3500 all null and void because the state of
Missouri would not allow me to register the vehicle for 2 years. I believe I still owe the
insurance company about $185 and I will forward that last bill to Santander. I received tickets
every time the car was parked on the street and we do not have off street parking available at
my home. I have paid all of them and have not asked Santander to reimburse me for anything.

As discussed yesterday we will be proceeding with a canceling of the contract that will include
removing any and all derogatory credit information that is currently impacting me so harshly
that it has left me unable to provide stable housing for my boys. I need the negative scars
gone so I can begin to have a chance at stable housing again. As I mentioned yesterday, the
purchase agreement included my partners income and they used my credit to secure the loan.
Only my information ended up on the agreement and only I was impacted on my credit. When
he continued being abusive I had to remain with him because this car crippled me so much it
caused a whole life downward spiral including me going back to work prematurely and risking
losing my disability as a result.

I am going to bcc my financial coach and her recommended attorney in case we decide this is
more of a lawsuit situation. Hopefully it is a simple resolve and I can return the car without a
repossession or any negative impact on my credit score any longer.

I will attach proof of no income at the time of purchase to another email.

EXHIBIT B

Thank you

Crystal Brown


Sent from my iPhone


\-\-
**C Lynn Brown**
performersinc.org
Linkedin
Facebook

**EXHIBIT B**



---------- Forwarded message ---------
From: **Crystal B** <crysb77@gmail.com>
Date: Thu, Nov 30, 2023 at 10:37 AM
Subject: 25328350
To: <eorequest@santanderconsumerusa.com>


I have attached my benefit verification letter from social security received in November 2022 when I was officially considered disabled. I waited from 2019 to 2022 for this approval. During the wait period I did not have income other than what my partner at the time provided. This was discussed upon purchase , but only one name ended up on the loan agreement. It was my credit that secured the loan. Now 2 years after I have made payments and every effort to continue paying even despite my inability to register the car and countless hours needed to investigate and even find out what Missouri DMV was taking about and why they wouldn't allow me to register a car.
I'm have paid off several auto loans in my long history, and never have I ever had an issue registering a vehicle. This was expressed to Santander in 2021 then again in 2022. When I finally went in this year to request one last time I managed to squeeze additional information out of her that the lien is through Bank of America.

As agent ID number 796558 mentioned yesterday Santander continues to remain unaware of this lien, despite my numerous attempts to inform them myself that something was not right there . She then asked if I called Bank of America. I simply believe I have done too much, and at this point I just want to erase the car from my memory as it has caused me 2 years of financial and mental stress.

Thank you for offering to contact the DMV and to cancel the contract. I look forward to also hearing about how Santander will also prevent my credit from continuing to be scarred.

Is it possible to request that all further communication take place in writing? I am disabled once again and it is just easier for me given my cognitive issues associated with the conditions.

Thank you again for your time and understanding.

This is sent directly from my SSI online so please let me know if I need to send another way.

Crystal

blob:https://secure.ssa.gov/5bc9c9b6-7308-413b-a765-839aa845c1de

**EXHIBIT B**

Sent from my iPhone

--
**C Lynn Brown**
performersinc.org
Linkedin
Facebook

EXHIBIT B

## LAW 553-MO-eps-14 1/20

### RETAIL INSTALLMENT SALE CONTRACT
### SIMPLE FINANCE CHARGE

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| CRYSTAL BROWN | N/A | FRANK LETA HONDA<br>509 AUTO MALL DR<br>O'FALLON MO 63368 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2016 | HONDA PILOT | 60882 | | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural  ☐ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 1700.00 is |
|---|---|---|---|---|
| 19.05 % | $ 17122.05 | $ 24516.99 | $ 41639.04 | $ 43339.04 |

**WARRANTIES SELLER DISCLAIMS**
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 578.32 | MONTHLY       beginning 08/17/2021 |
| N/A | $ N/A | N/A |
| N/A | | |

**APPLICABLE LAW**
Federal law and the law of the state of Missouri apply to this contract.

**NO COOLING OFF PERIOD**
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

**Late Charge.** If a payment is not received in full within 15 days after it is due, you will pay a late charge of 5% of the part of the payment that is late. If the payment due is $25 or less, the maximum late charge will be $5. Otherwise, the maximum late charge will be $25 and the minimum charge will be $10.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

This provision applies only if the vehicle will be used for personal, family or household purposes.
Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.
This provision applies only if the vehicle is used for business or agricultural purposes.
Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

EXHIBIT 2

## ITEMIZATION OF AMOUNT FINANCED

**1 Cash Sale Price**

Vehicle Cash Sale Price (including $ N/A sales tax) ........ $ 24500.00

Administrative Fee ........ $ 199.99

AN ADMINISTRATIVE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW BUT MAY BE CHARGED BY A DEALER. THIS ADMINISTRATIVE FEE MAY RESULT IN A PROFIT TO DEALER. NO PORTION OF THIS ADMINISTRATIVE FEE IS FOR THE DRAFTING, PREPARATION, OR COMPLETION OF DOCUMENTS OR THE PROVIDING OF LEGAL ADVICE. THIS NOTICE IS REQUIRED BY LAW.

Other N/A ........ $ N/A
Other N/A ........ $ N/A
Other N/A ........ $ N/A

Total Cash Sale Price ........ $ 24699.99 (1)

**2 Total Downpayment =**

Trade-In 2005 HYUNDAI SANTA FE
(Year)   (Make)   (Model)

Gross Trade-In Allowance ........ $ 1700.00
Less Pay Off Made By Seller to N/A ........ $ N/A
Equals Net Trade In ........ $ 1700.00
- Cash ........ $ N/A
+ Other N/A ........ $ N/A
+ Other N/A ........ $ N/A
+ Other N/A ........ $ N/A
(If total downpayment is negative, enter "0" and see 4H below) ........ $ 1700.00 (2)

**3** Unpaid Balance of Cash Sale Price (1 minus 2) ........ $ 22999.99 (3)

**4** Other Charges Including Amounts Paid to Others on Your Behalf
(Seller may keep part of these amounts):

A Cost of Optional Credit Insurance
Paid to Insurance Company or Companies.
Life ........ $ N/A
Disability ........ $ N/A ........ $ N/A

B Other Optional Insurance Paid to Insurance Company or Companies ........ $ N/A

C Official Fees Paid to Government Agencies
to N/A for N/A ........ $ N/A
to N/A for N/A ........ $ N/A
to N/A for N/A ........ $ N/A

D Optional Gap Contract ETHOS ........ $ 700.00

E Government Taxes Not Included in Cash Sale Price ........ $ N/A

F Government License and/or Registration Fees
N/A
TEMP TAGS11/NOTICE OF LIENS6 ........ $ 17.00

G Government Certificate of Title Fees ........ $ N/A

H Other Charges (Seller must identify who is paid and describe purpose)
to N/A for Prior Credit or Lease Balance ........ $ N/A
to ETHOS for ETHOS 36MO/3600CM ........ $ 800.00
to N/A for N/A ........ $ N/A
to N/A for N/A ........ $ N/A
to N/A for N/A ........ $ N/A
to N/A for N/A ........ $ N/A
to N/A for N/A ........ $ N/A
to N/A for N/A ........ $ N/A
to N/A for N/A ........ $ N/A
to N/A for N/A ........ $ N/A
to N/A for N/A ........ $ N/A

Total Other Charges and Amounts Paid to Others on Your Behalf ........ $ 1517.00 (4)

**5** Amount Financed (3 + 4) ........ $ 24516.99 (5)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before N/A , Year N/A . SELLER'S INITIALS X

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term 72 Mos. ETHOS
I want to buy a gap contract.    Name of Gap Contract
Buyer Signs X
You have a right to cancel a gap contract within 15 days of buying it and receive a full refund for the charge of the gap contract.

**Returned Check Charge:** You agree to pay a charge of $ 25 if any check you give us is dishonored or any electronic payment is unpaid.

Buyer Initials X _____ Co-Buyer Initials X N/A

Insurance. You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**
**Optional Credit Insurance**
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
Credit Life $ N/A
Credit Disability $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
☐ N/A N/A
Type of Insurance    Term
Premium $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

☐ N/A N/A
Type of Insurance    Term
Premium $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.
I want the insurance checked above.

X N/A   N/A
Buyer Signature   Date
X N/A   N/A
Co-Buyer Signature   Date

You have a right to cancel credit insurance within 15 days of buying it and receive a full refund or credit for the credit insurance premium.

THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.

**OPTIONAL OTHER BENEFIT(S)** You want to purchase the other benefit(s) written with the company(ies) and for the coverage periods and charge(s) shown below.

Type of Benefit ETHOS MAINT
Company ETHOS $ 800.00
Coverage Period 36 Mos. or 36000 Miles
Type of Benefit N/A
Company N/A $ N/A
Coverage Period N/A Mos. or N/A Miles
Type of Benefit N/A
Company N/A $ N/A
Coverage Period N/A Mos. or N/A Miles
Type of Benefit N/A
Company N/A $ N/A
Coverage Period N/A Mos. or N/A Miles
Type of Benefit N/A
Company N/A $ N/A
Coverage Period N/A Mos. or N/A Miles

EXHIBIT 2    CUSTOMER/TRUTH-IN-LENDING COPY
LAW 553-MO-eps-14 1/20 v1    Page 2 of 4

# OTHER IMPORTANT AGREEMENTS

## 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

## 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation. or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security interest.**
You give us a security interest in:
* The vehicle and all parts or goods put on it;
* All money or goods received (proceeds) for the vehicle;
* All insurance, maintenance, service, or other contracts we finance for you; and
* All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. You agree to name us on your insurance policy as an additional insured and as loss payee. Unless you provide us with evidence of the insurance coverage required by this contract, we may buy insurance at your expense to protect our interests in the vehicle. This insurance may, but need not protect your interests. The coverage that we buy may not pay any claim that you make or any claim that is made against you in connection with the vehicle. You may later cancel any insurance we buy, but only after providing us with evidence that you have obtained the insurance this contract requires. If we buy insurance for the vehicle, you will be responsible for the costs of that insurance, including the insurance premium, finance charges and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. We may add the costs of the insurance to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own. If we buy insurance, the charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract.
If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe at once after we give you any notice the law requires. Default means:
* You do not make any payment when due; or
* You start a proceeding in bankruptcy or one is started against you or your property; you give false, incomplete, or misleading information during credit application; or you break any agreements in this contract; except that we will only treat these events as defaults if they significantly impair the prospect of payment, performance, or the ability to realize upon the collateral.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and any court costs, as the law allows. The maximum attorney's fee you will pay will be 15% of the amount you owe. You will also pay any collection costs we incur as the law allows.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you after we give you any notice the law requires. We may only take the vehicle if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

CUSTOMER/TRUTH-IN-LENDING COPY

Buyer Initials X _____   Co-Buyer Initials X _N/A_____

EXHIBIT 2

Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.    Buyer Signs **X** _____    Co-Buyer Signs **X** N/A _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See the rest of this contract for other important agreements

**Notice to the Buyer.**
**Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to an exact copy of the contract you sign. Under the law you have the right to pay off in advance the full amount due and to obtain a partial refund of the finance charge (time price differential).**

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs **X** _____    Date 07/03/21    Co-Buyer Signs **X** N/A _____    Date N/A
Buyer Printed Name CRYSTAL BROWN _____    Co-Buyer Printed Name N/A _____
If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A _____    Title N/A _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here **X** N/A _____    Address N/A _____
Seller signs FRANK LETA HONDA _____    Date 07/03/21    By **X** _____    Title _____

Seller assigns its interest in this contract to SANTANDER CONSUMER USA INC    (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse    ☒ Assigned without recourse    ☐ Assigned with limited recourse
Seller FRANK LETA HONDA
By **X** _____    Title _____

**LAW** FORM NO. 553-MO-eps-14 (REV 1/20)
©2020 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

EXHIBIT 2

CUSTOMER/TRUTH-IN-LENDING COPY

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST CLAIR COUNTY, ILLINOIS

CRYSTAL BROWN,                          )
                                        )        No. 24-LA-0123
            Plaintiff,                  )        Courtroom 403
                                        )
-vs.-                                   )
                                        )
SANTANDER CONSUMER USA INC., et al,     )
                                        )
            Defendants.                 )

## PLAINTIFF'S NOTICE OF HEARING

TO:    ALL COUNSEL

       PLEASE TAKE NOTICE that Plaintiff's Motion for Preliminary Injunction has been

scheduled for hearing in the above-referenced case, at the Circuit Court of St. Louis City, on

**Monday, March 25, 2024,** at **9:00 AM**, in **Courtroom 403**, or as the Court deems necessary.

                          Respectfully submitted,
                          SWMW Law, LLC

                          By: */s/ Benjamin S. McIntosh*
                              Benjamin S. McIntosh, #68248
                              Asbestos@swmwlaw.com
                              Attorneys for Plaintiff
                              701 Market St., Suite 1000
                              St. Louis, MO 63101
                              (314) 480-5180
                              (314) 932-1566 Facsimile

## **PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing document will be personally served
with the summons.

*/s/Ashley Solomon*