**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CRYSTAL BROWN, On Behalf of Herself and Those Similarly Situated,** <br><br> Plaintiffs, <br><br> v. <br><br> **SANTANDER CONSUMER USA INC.,** <br><br> Defendant. | Case No. 3:24-CV-00665-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This case concerns the sale of cars on credit. Plaintiff Crystal Brown ("Brown" or "Plaintiff") brings this putative class action on behalf of herself and others who financed the purchase of a car that, unbeknownst to them, was encumbered by a preexisting lien. Defendant Santander Consumer USA, Inc. ("Santander" or "Defendant") buys the financing contracts from the dealerships that sell these vehicles, thus making it Brown's and the putative class members' creditor. Compl. ¶ 2. Santander timely removed the case to this Court from the Circuit Court of St. Clair County, Illinois. (Doc. 1). Brown moves to remand the case to that court. (Doc. 7).

### FACTUAL AND PROCEDURAL BACKGROUND

On July 3, 2021, Brown bought a 2016 Honda Pilot from the Frank Leta Honda dealership in O'Fallon, Missouri. She financed over 95% of the purchase price pursuant to a "retail installment contract" that was assigned to Santander on the same day. Brown did not know that the car was subject to a preexisting lien until she received a certificate of title showing two other "owners" and a bank as the "first lien" holder. These encumbrances

prevented her from registering her car in Missouri. Compl. ¶¶ 8-19.

Brown contacted Santander and requested a lien release so that she could resolve the preexisting lien. Santander refused to provide a lien release until the car was paid off. Santander also demanded that Brown continue making regular payments on her car loan even though she was unable to register it. Brown has now made over $9,000 in payments to Santander. *Id.* ¶¶ 22-25.

Brown filed this putative class action in the Circuit Court of St. Clair County, Illinois, on January 24, 2024. She seeks to represent two classes of individuals. First, a "Damages Class" consisting of people who (i) purchased a vehicle with a preexisting lien or security interest on it; (ii) pursuant to a retail installment contract held by Santander that is "similar" to hers; and (iii) from whom Santander collected or attempted to collect payments on those contracts. Second, Brown seeks to represent an "Injunction Class," consisting of people who (i) purchased a vehicle with a preexisting lien or security interest on it *or may in the future do so*; (ii) pursuant to a retail installment contract held by Santander that is "similar" to hers; and (iii) from whom Santander collected, attempted to collect, *or will collect* payments on those contracts. Compl. ¶¶ 29, 30. Each of these classes "exceed[s] forty (40) persons" who "purchased vehicles in which Santander knew or should have known through reasonable diligence, had preexisting liens on them in violation of the warranty of title and, thus, making collection on the retail installment contracts unjust and illegal." *Id.* ¶¶ 33-35.

Brown's complaint asserts claims under the consumer protection statutes of 48 states (Count I), breach of warranty of title under the Uniform Commercial Code ("U.C.C.") (Count II), negligent misrepresentation (Count III), and unjust enrichment (Count IV). Her individual damages consist of over $9,000 in monthly payments to Santander on the retail

installment contract, traffic citations, insurance payments, fees, loss of time, inconvenience, annoyance, loss of creditworthiness and other damages. *Id.* ¶¶ 25-26. Class-wide damages include "the sum of the amounts paid to Santander on retail installment contracts, the amount of any down payment made by the class members, the fair market value of any trade-in vehicle, and reasonable attorney's fees and expenses."

Santander removed the case to this Court, invoking federal subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Brown filed a motion to remand, arguing that Santander's jurisdictional arguments were "speculative." (Doc. 7). Brown later filed an "Emergency Motion for Leave to file a Supplemental Memorandum in Support of Plaintiff's Motion to Remand," which raised a separate and independent ground for remand: Santander's alleged failure to promptly notify the Circuit Court in St. Clair County of the removal to federal court. (Doc. 19). The undersigned held a hearing earlier today to discuss the arguments in more depth. As set forth below, the Court is satisfied that it has subject matter jurisdiction over this action.

## LEGAL STANDARD

Removal is governed by 28 U.S.C. § 1441, which provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The removing party bears the burden of demonstrating that removal is proper. *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004).

A plaintiff may challenge removal by filing a motion to remand the case back to state

court. Remand to state court is appropriate for (1) lack of district court subject matter jurisdiction or (2) a defect in the removal process. 28 U.S.C. §§ 1446, 1447(c); *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 625–26 (7th Cir. 2013). "A motion to remand must be granted if the case removed from state court could not have been brought in federal court originally for lack of subject-matter jurisdiction." *Sarauer v. Int'l Ass'n of Machinists, Dist. No. 10*, 966 F.3d 661, 668 (7th Cir. 2020) (citing 28 U.S.C. §§ 1441(a), 1447(c)).

## DISCUSSION

CAFA authorizes federal courts to hear cases in which "(1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant ("minimal diversity"); and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate." *Sabrina Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017) (citing 28 U.S.C. § 1332(d)). Santander identified Brown as a citizen of Missouri and itself as a citizen of Illinois and Texas. Both parties agree that this satisfies minimal diversity. They disagree as to the first and third CAFA requirements (numerosity and aggregate amount in controversy).

Santander contends that the scope of its car financing business is sufficiently large to permit an inference of jurisdiction based on Brown's individual allegations and the scope of the two sub-classes she seeks to represent. Brown contends that Santander's jurisdictional allegations impermissibly rely on assumptions that may not be borne out. Specifically, she contends that the complaint only alleges more than 40 plaintiffs per sub-class and that it is far from certain that their damages will combine to reach CAFA's $5,000,000 threshold, exclusive of interest and costs.

Santander responded to Brown's remand motion by submitting an affidavit from

Randy Brockenstedt, its Senior Director of Collections. (Doc. 13-1). Mr. Brockenstedt's affidavit explains that over the past four years,[1] Santander purchased over three million contracts like the one Brown entered into. *Id.* ¶ 10. As such, it would take a "herculean effort over several months and thousands of man-hours" to review the relevant documents associated with these transactions to identify all individuals who purchased a vehicle with a preexisting lien on it. *Id.*

Santander does, however, track when its lien is not perfected on a vehicle it financed within 90 days of the purchase—this is known as a "lien exception." *Id.* ¶ 11. Santander identified 61,390 lien exceptions over the last four years. *Id.* Although the reasons for a lien exception are generally not known to Santander, one possible reason is the dealership's failure to clear title of a pre-existing lien—the scenario Brown alleges here. *Id.* ¶ 12. Mr. Brockenstedt explains that "[b]ased on experience, we know that many more than 1% of the lien exceptions are due to [a] dealership failing to clear title of a pre-existing lien." *Id.* ¶ 19. From there, Santander posits that if 1% of all lien exceptions are attributable to a dealership's failure to clear a pre-existing lien, and the purchaser's damages are comparable to the approximately $10,000 in damages that Brown alleges,[2] then there would be at least 613 (61,390 ÷ 100 = 613.9) plaintiffs in the class, with aggregate damages of $6,139,000 (613.9 × $10,000). *Id.* ¶¶ 17-18. Brown dismisses these calculations as pure guesswork that cannot support federal subject matter jurisdiction under CAFA.

---

[1] Santander chose a four-year lookback period because "the statute of limitations for breach of UCC § 2-312 is four years." Brockenstedt Affidavit, footnote 1 (Doc. 13-1 at 3).
[2] Santander estimates Brown's individual damages to be around $10,000 because she seeks to recover her monthly payments on the retail installment contract to Santander, which are "in excess of $9,000," traffic citations, insurance payments, fees, loss of time, inconvenience, annoyance, loss of creditworthiness, and other damages.

The Court will address each disputed CAFA factor in sequence. It will then discuss whether remand is warranted due to Santander's alleged failure to promptly notify the St. Clair County Circuit Court that it had removed the case to federal court.

1. <u>Numerosity</u>

The numerosity requirement under CAFA requires the class of plaintiffs to consist of 100 or more "class members." 28 U.S.C. § 1332(d)(5)(B). The term "class members" means "the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D). The relevant question here is whether 100 or more people fall within the class definition in Brown's complaint. Brown alleges that each of the two sub-classes she seeks to represent only "exceed[s] forty (40) persons." Thus, a strict reading of Brown's complaint leaves the possibility that the combined number of class members in this action is less than 100. Santander cites Mr. Brockenstedt's affidavit to argue that it has financed the purchase of approximately three million cars over the last four years, that well over 60,000 of these purchases are subject to a lien exception, and that the company "know[s] that many more than 1% of the lien exceptions are due to [a] dealership failing to clear title of a pre-existing lien." These datapoints, according to Santander, permit a reasonable inference that over 600 plaintiffs make up the two sub-classes that Brown seeks to represent.

Brown has offered no facts of her own to dispute Santander's jurisdictional proofs. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (noting that both sides may submit proof in support of their jurisdictional arguments under CAFA); *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 299 (4th Cir. 2008) (finding CAFA jurisdiction based on defendant's factual allegations where "plaintiffs have offered nothing to suggest that the

Page 6 of 13

58,800–customer figure is not an accurate number."). But that is not all. On the same day she filed her complaint in state court, Brown filed a motion for a preliminary injunction where she argued that "[i]f Santander is not ordered to do something to fix this problem, *thousands of people* may be unnecessarily and irreparably thrust into financial catastrophe." (Doc. 1-1 at 32) (emphasis added). The Court will take Brown at her word, especially because a class size in the thousands appears plausible in light of Santander's asserted jurisdictional facts. *See Schutte v. Ciox Health, LLC*, 28 F.4th 850, 856 (7th Cir. 2022) (a plaintiff "cannot avoid federal jurisdiction by trying to retreat from her own allegations."); *Roppo*, 869 F.3d at 581 (similar). Against this backdrop, the Court has little trouble concluding that 100 or more members "fall within the definition of the proposed or certified class." 28 U.S.C. § 1332(d)(1)(D); *see also Irish v. BNSF Ry. Co.*, No. 08-cv-469-slc, 2009 WL 276519, at *13 (W.D. Wis. Feb. 4, 2009) (finding numerosity requirement satisfied based on the defendant's calculations and noting that "it is irrelevant that plaintiffs predict that less than 100 people actually will join their lawsuit.").

Thus, Santander has sufficiently alleged that several hundred plaintiffs, if not more, are within the putative class. This satisfies the numerosity requirement.

2. Aggregate Amount in Controversy

The aggregate amount in controversy does not need to be pled with mathematical certainty. *Schutte*, 28 F.4th at 856; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006). "[A] good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000, the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Blomberg v. Service Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011) (internal

citation omitted).

The Seventh Circuit has repeatedly endorsed the types of calculations and evidence-based assumptions that Santander submitted here to satisfy the amount in controversy. *See e.g.*, *Schutte*, 28 F.4th at 856; *Roppo*, 869 F.3d at 581; *Blomberg*, 639 F.3d at 763; *Meridian*, 441 F.3d at 541-42 (listing ways in which proponents of federal subject matter jurisdiction may establish amount in controversy, including "by calculation from the complaint's allegations."). Here, Santander offers a conservative estimate that the aggregate amount in controversy is over $6,000,000, exclusive of interest and costs. This estimate is based on Santander's calculation of the number of people who may be within the class multiplied by Brown's individual damages of approximately $10,000. This simple calculation is exactly the type of factual proof that the Seventh Circuit approved in *Schutte*. There, the plaintiff filed a putative class action in Wisconsin state court alleging that her healthcare provider violated state law by charging her certain fees for electronic copies of her medical records. *Schutte*, 28 F.4th at 853. After the defendant removed the case to federal court, the plaintiff moved to remand on the basis that the defendant had failed to establish the necessary amount in controversy under CAFA.[3] *Id.* at 854. The defendant submitted a declaration from its senior vice president of operations, which asserted that the company had fulfilled approximately 727,500 similar requests for medical records in Wisconsin over a six-year period (the applicable limitations period). *Id.* at 856. And although the *exact* amount in controversy may have been unknown at the time, the court had little trouble finding that the CAFA threshold was met:

---

[3] The plaintiff in that case also raised CAFA's "local controversy" exception under 28 U.S.C. § 1332(d)(4)(A) as a basis for remand. *Schutte*, 28 F.4th at 854. That issue is not relevant here.

> To reach the $5 million threshold on compensatory damages alone, these requests would need to average only around $6.88 in overcharges. Given that [plaintiff's] claimed compensatory damages were $61, this estimate is also sufficient to meet [defendant's] burden. *Id.*

This type of calculation is exactly what Santander submitted here. It reviewed its records, identified a plausible number of class members, and multiplied that number by Brown's claimed individual damages. Like in *Schutte*, [t]hese estimates are . . . sufficiently plausible to satisfy the amount-in-controversy." *Id.* at 857.

Brown relies heavily on the Seventh Circuit's decision in *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 733 (7th Cir. 2021), to argue that "speculative" allegations concerning the amount in controversy under CAFA cannot support federal subject matter jurisdiction. But in *Ware*, the plaintiffs' whole theory of liability was that the defendant failed to comply with the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, when it offered them a gift card to satisfy a warranty that they had purchased for a home theater system. *Id.* at 728. The plaintiffs did not allege that the amount of the gift card was insufficient; all that was known about their alleged damages was that they were "quite a bit less" than the $5,000 they initially spent. *Id.* at 732. So, when the plaintiffs sought to invoke CAFA jurisdiction by claiming that a putative class of similarly situated people consisted of "potentially thousands of class members," the court found the lack of any individual damages allegations troubling. *Id.* at 733. Indeed, the court noted that "the plaintiffs *imply* that the amount in controversy is greater than $5 million, but they do not actually make any specific factual allegations or assertions on that point." *Id.* (emphasis added).

Here, Santander has done much more than imply the necessary amount in controversy. It has outlined the scope of its car financing business (in the millions of

transactions) and plausibly explained how the number of class members and their aggregate amount in controversy (based on the individual damages that Brown presented here) meets CAFA's requirements. The quantum of factual allegations supporting CAFA jurisdiction is what separates this case from *Ware*. And while Brown insists that Santander's proof is "speculative," mathematical certainty, as noted, is not required. *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013) (rejecting district court's insistence on "formula or methodology for calculating the potential damages."). "A good-faith estimate is acceptable if it is plausible and adequately supported by the evidence." *Blomberg*, 639 F.3d at 763. That is what Santander provided, and it was sufficient to meet its burden. *See Strawn*, 530 F.3d at 299 (plaintiff's allegations and class definition combined with defendant's internal data demonstrated aggregate amount in controversy under CAFA). Thus, the Court finds that this case meets CAFA's amount in controversy threshold.

    3. <u>Failure to Promptly Notify the State Court of Removal</u>

Brown's final argument for remand, per her supplemental submission (Doc. 19), concerns Santander's alleged late notice to the Circuit Court for St. Clair County that the case had been removed. Santander argues that the passage of 28 days between removal and notification does not warrant the "drastic remedy" of remand. (Doc. 22).

Santander removed the case to this Court on March 6, 2024. (Doc. 1). On April 1, 2024, Brown filed a supplemental motion to remand, arguing that, as of that day, "Defendant ha[d] not notified the state court of its notice of removal as required by 28 U.S.C. § 1446(d)." (Doc. 19). Brown explained that on March 28, 2024, her counsel received an order from the St. Clair County Circuit Court resetting a status conference to June 3, 2024, after Brown's motion for preliminary injunction had been noticed for hearing, and no one showed. Upon

receipt of this scheduling order, Brown confirmed that the state court was unaware of Santander's notice of removal. Santander filed a response to Brown's supplemental motion on April 3, 2024, and explained that it filed a notification of removal in the state court on that day. (Doc. 22). Santander explained that in the 28 days since it notified the state court that the case had been removed, "there have been [no] substantive proceedings in the State Court Action," other than the scheduling order mentioned above. *Id.*

> 28 U.S.C. § 1446(d) provides that:
>
> Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

The purpose of this requirement "is to give th[e] [state] court notice of the removal so that it can stay its proceedings and thereby avoid duplicitous and possibly inconsistent results in the same case." *Delavigne v. Delavigne*, 530 F.2d 598, 601 n.5 (4th Cir. 1976). The statute does not define the word "promptly," but it is apparent that it does not mean "simultaneous." *Almonte v. Target Corp.*, 462 F.Supp.3d 360, 366 (S.D.N.Y. 2020) ("promptly" as used in section 1446(d) "is a flexible, fact-specific standard"); *accord Nixon v. Wheatley*, 368 F. Supp. 2d 635, 640 (E.D. Tex. 2005); *Parker v. Malone*, No. 7:03CV00742, 2004 WL 190430, at *1 (W.D. Va. Jan. 15, 2004).

Courts often consider the activity in the state court during the intervening period between removal and notification to the state court to determine whether the notification was "prompt." For instance, in *Nixon*, the Eastern District of Texas found a 22-day delay to be "reasonably prompt" because the state court took no action in the intervening period. 368 F. Supp. 2d at 640. In *Hanratty v. Watson*, on the other hand, this Court found that a 51-day delay

was not prompt where the defendant failed to notify the state court *and* the plaintiff of removal, and a third party filed a motion to intervene in the state court action, which the state court later allowed. *Hanratty v. Watson*, No. 10-cv-662-JPG, 2010 WL 4978105, at *5-6 (S.D. Ill. Dec. 2, 2010). Here, Santander notified the state court that this case had been removed 28 days after the fact. The Court is satisfied that Santander's delay in combination with the state court's non-substantive scheduling order does not frustrate the purpose of section 1446(d). Thus, Santander's notification to the state court was sufficiently prompt. *See Whitney v. Wal-Mart Stores, Inc.*, No. Civ.04-38-PH, 2004 WL 1941345, at *1 (D. Me. Aug. 31, 2004) (six-month delay not prompt but harmless where state court only entered routine scheduling order during intervening period); *Calderon v. Pathmark Stores, Inc.*, 101 F. Supp. 2d 246, 247-48 (S.D.N.Y. 2000) (36-day delay sufficiently prompt where state court took no action during intervening period).

## Conclusion

For these reasons, Plaintiff's motion to remand (Doc. 7) is **DENIED**. Plaintiff's Emergency Motion for Leave to file a Supplemental Memorandum in Support of Remand (Doc. 19) is **GRANTED**, as the Court has considered the arguments in that pleading.

The Court notes that Santander filed a motion to stay the proceedings in this case pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* (Doc. 8). On March 20, 2024, the Court granted Brown's consent motion to stay briefing on Santander's motion to stay (Doc. 11) so that it could resolve any jurisdictional issues first. (Doc. 12). Now that the Court has verified its subject matter jurisdiction over the case, the stay on the briefing of Santander's motion to stay is **LIFTED**. Santander shall re-file its motion to stay the proceedings in this case pursuant to Section 3 of the FAA on or before **February 18, 2025**.

Brown shall file a response within **30 days** of that filing.

**IT IS SO ORDERED.**

DATED: February 11, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**