UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CRYSTAL BROWN, on behalf of Herself and those similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:24-cv-00665-NJR |
| SANTANDER CONSUMER USA INC. | ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION TO LIFT STAY AND SUGGESTIONS IN SUPPORT

Plaintiff Crystal Brown hereby moves this Court to lift the stay entered on August 8, 2025 (Doc. 48) and ordering the parties to arbitration, and further requests the case be reinstated to proceed in this Court.

## INTRODUCTION

Following the Court's order granting Santander's motion to compel arbitration, the parties filed a Joint Status Report Regarding Arbitration, stating their intention to "pursue arbitration with the American Arbitration Association." The arbitration agreement in question provides that the parties will be bound by the rules of the arbitration association to which arbitration is submitted. (Ex. 1, Arbitration Agreement, pg. 6).

Plaintiff initiated arbitration with the American Arbitration Association ("AAA"). But Santander failed to timely pay the administration fee to initiate the arbitration. As a result, pursuant to Rule 10(b) of the AAA's Consumer Arbitration Rules, the AAA sent a letter closing the arbitration and stating: "now that the AAA declines to administer this arbitration, either party may choose to submit its dispute to the appropriate court for resolution." (Ex. 2, 12/4/25 Letter from AAA); Ex. 3, AAA Consumer Arbitration Rules, pg. 12, Rule 10(b)).

In accordance with the arbitration agreement—which incorporated the AAA rules—the stay should be lifted and this matter should now proceed in this Court. Under Section 3 of the FAA, arbitration "has been had" under both federal and Missouri case law, with the result being the arbitration rules directing the parties may return to this Court for resolution of matter. The Seventh Circuit's decision in *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609 (7th Cir. 2024), is on point and supports granting this motion to lift the stay. Likewise, the AAA's closing of arbitration for failure to pay fees constitutes a finding that Santander was "in default" of proceeding with arbitration under FAA Section 3.

As this Court previously found (Doc. 48, pgs. 18-19), because the arbitration clause delegated threshold arbitrability questions to the arbitrator, the AAA's findings in this regard cannot be disturbed. Santander cannot avoid the result of enforcement of its arbitration agreement. It must be rigorously enforced. The AAA had discretion to close the arbitration and allow the parties to litigate in court, and exercised that discretion consistent with the arbitration agreement.

## BACKGROUND

Santander previously filed a motion to compel arbitration based on its arbitration provision in the Extension Agreement. The Court granted that motion, ordering the parties to arbitrate in accordance with that agreement. (Doc. 48).

The arbitration agreement provides that the "party initiating arbitration *must choose*" either the AAA or the National Arbitration Forum ("NAF") as the arbitrator "and follow the rules and procedures that govern disputes established by the chosen Administrator. (Ex. 1, pg. 6). This effectively made the AAA the *only* available organization because, under *A-1 Premium*, the defunct NAF cannot serve as the arbitrator following the NAF agreeing to cease administering

2

consumer arbitration following actions taken against it by the Minnesota Attorney General. *A-1 Premium Acceptance, Inc. v. Hunter*, 557 S.W.3d 923 (Mo.banc 2018).

On September 8, 2025, the parties submitted a "Joint Status Report Regarding Arbitration," informing the Court of their intention to "pursue arbitration with the American Arbitration Association at this time." (Doc. 49). Thereafter, Crystal Brown submitted a demand for arbitration to the AAA and paid her portion of the initial filing fee. (Ex. 4, AAA Letter of 10/23/25; Ex. 5, Receipt for Brown's Fees). Importantly, Brown ensured that she received confirmation that her payment of the fees went through.

On October 23, 2025, the AAA sent a letter to the parties acknowledging the arbitration demand and warning that arbitration may be declined if Santander did not timely pay its portion of the fees:

> Under the Consumer Rules, the consumer pays a filing fee of $225 and the business pays a filing fee of $375. We received the consumer's $225 portion of the filing fee. To ensure that the filing requirements are complete, **the business is requested to submit filing fees of $375**.
> …
>
> **The requested payment should be received no later than 30 days from the date of this letter or the AAA may decline to administer this dispute if the business does not timely respond.**

(Ex. 4, 10/23/25 Letter from AAA, pg. 1) (emphasis original).

After arbitration was initiated, Santander submitted an answer to Brown's initial arbitration demand even though the AAA's letter stated that "[n]o answering statement or counterclaim is due at this time." (Ex 4, pg. 1) (emphasis original). However, Santander failed to pay the required filing fees to initiate arbitration despite the AAA's warning that it may decline to administer the matter if the business does not make a timely payment. (Ex. 2).

Rule 10 of the AAA Consumer Rules provides:

(a) The AAA, *in its sole discretion*, may make the administrative determination to decline to accept a Demand for Arbitration, stop the administration of an ongoing arbitration, and/or decline to administer future cases from a party under the following circumstances:

> i) where a party or the party's representative fails to abide by the American Arbitration Association-International Centre for Dispute Resolution Standards of Conduct for Parties and Representatives.
> ***ii) where a party fails to submit payment of fees requested in accordance with the Rules or Consumer Arbitration Fee Schedule***.
> iii) where the parties' consumer arbitration agreement does not comply with the Consumer Due Process Protocol.

(b) In the event the AAA makes the administrative determination to cease or decline administration of a case due to any of the reasons outlined in this Rule, the parties may choose to submit their dispute to the appropriate court.

(Ex. 3, AAA Consumer Rules, pg. 12) (emphasis added).

On December 4, 2025, the AAA sent the parties a letter stating:

> As of this date, the American Arbitration Association (AAA) has not received the requested fees from the business. The AAA is declining to administer this case and has closed our file. According to R-10(b) of the Consumer Arbitration Rules, now that the AAA declines to administer this arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

(Ex. 2, 12/4/25 Letter from AAA).

In accordance with the AAA rules incorporated into the arbitration agreement, Crystal Brown now requests the present stay be lifted so the case may proceed in this Court.

## ARGUMENT

### I.    The stay should be lifted in accordance with the terms of the arbitration agreement, which incorporated the AAA rules.

Section 3 of the Federal Arbitration Act requires that, where a suit is referable to arbitration, judicial proceedings be stayed "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Here, the parties' arbitration agreement called for arbitration pursuant to the AAA Consumer Arbitration Rules. The parties agreed to submit

arbitration to the AAA. In accordance with those rules, the AAA declined to proceed with arbitration due to Santander's failure to pay its share of arbitration fees. And AAA directed that the parties may proceed with their claims in this Court in accordance with those rules. Arbitration "has been had" under FAA Section 3, such that the parties' have fulfilled the Court's previous order, with the result being that the action may return to the Court for resolution.

"Courts must rigorously enforce arbitration agreements according to their terms, including … the rules under which that arbitration will be conducted." *A-1 Premium Acceptance, Inc. v. Hunter*, 557 S.W.3d 923, 926 (Mo.banc 2018). Here, the arbitration agreement provides that the parties "must" select either the AAA or the National Arbitration Forum as an arbitrator, and that they "must … follow the rules and procedures that govern disputes established by the chosen Administrator." (Ex. 1, pg. 6).

Under AAA Consumer Arbitration Rules R-10(b), "[i]n the event the AAA makes the administrative determination to cease or decline administration of a case due to any of the reasons outlined in this Rule, the parties may choose to submit their dispute to the appropriate court." (Ex. 3, pg. 12). Here, the AAA declined to administer Brown's arbitration because Santander failed to comply with the AAA's policies regarding consumer claims by failing to pay the required fees.

Santander "*expressly agreed to be bound by these rules. It cannot now complain of their enforcement.*" *Greco v. Uber Techs., Inc.*, 2020 WL 5628966, at *3 (N.D.Cal. Sept. 3, 2020) (emphasis original). Santander cannot ask "the Court to overturn the AAA rules and force the case back to arbitration." *Id. see also Heisman v. Wyndham Vacation Resorts, Inc.*, 2021 WL 1138125, at *3 (D.N.J. Mar. 22, 2021) ("Here, the arbitration 'has been had' as far as was possible. Plaintiffs followed the arbitration procedure and were rebuffed by the AAA, which

directed them to court."). Indeed, Santander moved this Court to compel this very arbitration, which has now been declined by the AAA based on its failure to abide by its own arbitration agreement.

The Seventh Circuit has addressed a similar situation, ruling that arbitration "has been had" under FAA Section 3 when they submit a case to arbitration that results in the parties being directed to proceed in court for a party's failure to follow the arbitration organization's rules. In *Wallrich*, a group of several thousand consumers initiated arbitration with the AAA against Samsung. *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 613 (7th Cir. 2024). Samsung refused to pay the administrative filing fees required by the AAA, so the AAA terminated the arbitration proceedings, "opening the door for the parties to pursue their claims in federal court." *Id*. But the consumers instead filed a petition to compel arbitration in the Northern District of Illinois. *Id*. The district court ordered Samsung to arbitrate and pay the fees. *Id*.

The Seventh Circuit reversed the order compelling arbitration "because the parties' alleged agreement incorporated the AAA's rules and procedures, which granted the AAA substantial discretion over resolving fee disputes." *Id*. The Court reasoned:

> The Federal Arbitration Act does not grant the consumers an unfettered right to arbitrate, and nothing in the statute treats parties differently based on financial status. Rather, all the law requires is that the parties arbitrate according to the terms of their agreement. The agreement here delegated fee issues to the procedures and rules of the AAA. And the AAA, using those rules, denied a stay, terminated the arbitration, and sent the claims to federal court after Samsung refused to pay its fees. The parties therefore fully "arbitrated" under their agreement. See *Noble Cap. Fund Mgmt., LLC v. US Cap. Glob. Inv. Mgmt., LLC*, 31 F.4th 333, 336 (5th Cir. 2022) ("Here the parties' arbitration agreements called for arbitration pursuant to JAMS [Rules], which included the right of JAMS to terminate the arbitration proceedings for nonpayment of fees by any party. Exercising this right, JAMS terminated the arbitration proceeding following the Fund's nonpayment. Following the lead of our sister circuits, we conclude that arbitration 'has been had.' "). Thus, even in a case like this one, where an arbitration proceeding ends before reaching the merits, "the parties still exercised their contractual right to arbitrate prior to judicial resolution in accordance with

the terms of their agreements."

*Id.* at 621–22 (7th Cir. 2024). The Court pointedly criticized the consumers for trying to avoid

the clear terms of the arbitration agreement they invoked:

> The parties agreed to abide by the rules and procedures of the AAA, and they
> proceeded through arbitration in accordance with those rules and their
> consequences. If the AAA believed Samsung was abusing the arbitration process,
> it could have stayed the case or threatened to decline administering future
> consumer arbitrations with Samsung, but it did not. Instead, the AAA terminated
> the proceedings and invited the parties to resolve their claims in district court. At
> that point, Samsung and the consumers' arbitration was complete. The consumers
> may view this result as unjust, but we are here because they invoked their alleged
> agreement with Samsung; they cannot now complain of that agreement's terms.

*Id.* Here, likewise, the parties agreed to be bound by the AAA rules, and Brown submitted an

arbitration demand to the AAA in accordance with this Court's order. Under *Wallrich*, arbitration

"has been had" under FAA Section 3, with the result being the case may return to this Court for

resolution. Santander cannot come back to Court now and complain that it does not like the

result of the arbitration process it asked for so it can have a second bite at the apple.

Further, Santander itself has previously argued that the arbitration agreement delegated

threshold questions of arbitrability to the arbitrator. (Doc. 41, pg. 5). The Court agreed, ruling

that many of the threshold arbitrability questions are for an arbitrator, not the Court, to decide.

(Doc. 48, pgs. 18-19). The Supreme Court "has consistently held that parties may delegate

threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by

'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S.

63, 69 (2019). Additionally, procedural issues, like fee disputes, are "presumptively *not* for the

judge, but for an arbitrator, to decide." *Wallrich*, 106 F.4th at 620 (quoting *Howsam v. dean

Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

Here, the Court previously ruled that "[t]he arbitration agreement clearly and unmistakably submits [threshold arbitrability] disputes to an arbitrator." (Doc. 48, pg. 19). The parties agreed to submit the matter to AAA. Just as in *Wallrich*, here, "[t]he parties thus bargained for the AAA's discretion over the payment of the administrative filing fees," including the consequences of a party's failure to timely pay those fees. 106 F.4th at 620. As a result, here, the parties' "arbitration proceeded in line with their agreement." *Id.* "The AAA considered the dispute and terminated the arbitration within its discretion." *Id.* "At that point, arbitration was complete, and the district court [does] not have the authority to flout the parties' agreement and disturb the AAA's judgment." *Id.*

Missouri case law,[1] likewise, holds that a selected arbitrator's decision to close an arbitration for violation of its rules is not for the court to disturb and, thus, the matter may proceed in court. Indeed, Missouri cases use the same reasoning as *Wallrich* in reaching this conclusion. In *Abram v. TitleMax*, the court addressed a similar situation, and disposed of nine other cases in the same manner. *Abram v. TitleMax of Missouri*, *Inc.*, 684 S.W.3d 74 (Mo. Ct. App. 2023).[2] There several consumers filed claims against TitleMax relating to loan agreements the consumers entered with TitleMax secured by liens on the borrowers' vehicles. *Id.* at 79-80. Each of the loan agreements contained arbitration clauses that provided "a chosen arbitration organization's rules apply to the extent they do not conflict with the arbitration agreement's language." *Id.* at 80.

---

[1] As was discussed in earlier briefing, the arbitration agreement is governed by Missouri law. (Doc. 37, pgs. 7-8).
[2] On the same day that *Abram* was decided, the Missouri Court of Appeals issued its opinions in the other related cases, and referred to its reasoning in *Abram* in those cases in holding the trial court was correct to deny a motion to compel arbitration based on the AAA's choice to decline to administer arbitration due to the business's violation of the AAA consumer rules. *See Arteaga v. TitleMax of Missouri, Inc.*, 684 S.W.3d 36 (Mo. Ct. App. 2023); *Baker v. TitleMax of Missouri, Inc.*, 684 S.W.3d 128 (Mo. Ct. App. 2023); *Brizendine v. TitleMax of Missouri, Inc.*, 684 S.W.3d 119 (Mo. Ct. App. 2023); *Bracy v. TitleMax of Missouri, Inc.*, 684 S.W.3d 26 (Mo. Ct. App. 2023); *Beckermann v. TitleMax of Missouri, Inc.*, 684 S.W.3d 99, 101 (Mo. Ct. App. 2023).

In *Abram*, several consumers initiated arbitration against TitleMax. *Id*. at 82. However, the AAA sent a letter stating that TitleMax failed to comply with AAA's policies regarding consumer claims and, therefore, it declined "to administer this claim and any other claims between TitleMax … and its consumers at this time" and administratively closed the file. *Id*. Like here, the AAA letter cited its rule providing that "either party may choose to submit its dispute to the appropriate court for resolution." *Id*. Counsel for the consumers then filed ten lawsuits, each asserting claims on behalf of ten plaintiffs per suit. *Id*. at 83.

TitleMax then moved to compel arbitration. *Id*. Plaintiffs opposed the motion, arguing that, *inter alia*, TitleMax could not seek arbitration after refusing to pay filing fees as directed by the arbitration clauses and failing to comply with the AAA rules for registering the arbitration agreements with it. *Id.* at 84. The trial court denied the motion to compel arbitration without stating its reasoning. *Id*. at 86. TitleMax appealed. On appeal, the appellate court noted that "[b]ecause all of TitleMax's loan agreements specifically state the selected arbitral tribunal's rules will apply, and TitleMax never objected to the AAA as Plaintiff's arbitral tribunal, this Court finds the AAA's rules are applicable and binding here." *Id*. at 89. Because the AAA declined to administer arbitration between TitleMax and its consumers based on TitleMax's violation of the AAA Consumer rules, the Court affirmed the trial court's order denying the motion to compel arbitration. *See id.* at 89-95.

Other federal appellate courts have reached the same conclusion as the Seventh Circuit in *Wallrich*. In *Noble Capital*, the Fifth Circuit Court of Appeals held that when an arbitration was terminated for failure to pay arbitration fees, it was "had in accordance with the terms" of the parties' arbitration agreements. *Noble Cap. Fund Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.*, 31 F.4th 333 (5th Cir. 2022). There, the parties entered a joint real estate venture

governed by two agreements, both of which containing "enforceable arbitration clauses." *Id*. at 335. Noble Capital initiated arbitration in JAMS. *Id*. During the pendency of arbitration, the arbitrator enjoined US Capital from using money from the joint Fund (a separate entity) arising from the joint venture. *Id*. The Fund claimed it could not pay its arbitration fees as a result and requested Noble pay the Fund's arbitration fees. *Id*. Ultimately the Fund's fees were not paid, so the JAMS panel terminated arbitration. *Id*. Noble then filed suit in state court, which was removed to federal court. *Id*. US Capital moved to compel arbitration, but this motion was denied. *Id*. On appeal, the Fifth Circuit stated:

> Here the parties' arbitration agreements called for arbitration pursuant to JAMS Comprehensive Arbitration Rules and Procedures, which include the right of JAMS to terminate the arbitration proceedings for nonpayment of fees by any party. Exercising this right JAMS terminated the arbitration proceeding following the Fund's nonpayment. Following the lead of our sister circuits, we conclude that arbitration 'has been had.' Even though the arbitration did not reach the final merits and was instead terminated because of a party's failure to pay its JAMS fees, the parties still exercised their contractual right to arbitrate prior to judicial resolution in accordance with the terms of their agreements.

*Id*. at 336. The court rejected US Capital's argument that the reason for termination—nonpayment of fees—meant arbitration had not "been had," reasoning:

> the statute does not ask why the arbitration terminated and thus the inquiry over whether arbitration "has been had" does not require us to examine the cause of the arbitration's termination, only that arbitration has been had in accordance with the terms of the agreement. There is no arbitration to return this case to and parties may not avoid resolution of live claims through compelling a new arbitration proceeding after having let the first arbitration proceeding fail.

*Id*. The District Court's order denying the motion to compel arbitration was affirmed.

Likewise, in *Pre-Paid Legal Services*, the Tenth Circuit affirmed the lifting of a stay arising from the granting of a motion to compel arbitration when the AAA closed the arbitration for failure to pay fees. *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1288 (10th Cir. 2015). There, like here, the defendant filed a motion to compel arbitration, which was granted.

*Id*. But, like here, the defendant failed to pay his share of the arbitration fees, so the AAA terminated arbitration. *Id*. at 1288-89. The plaintiff moved to lift the stay of the district court's proceedings, which was granted. *Id.* at 1289. The defendant appealed. The Tenth Circuit affirmed lifting the stay under FAA Section 3 on two grounds: first, that arbitration "has been had"; and, second, that the defendant was "in default in proceeding with such arbitration," effectively waiving the right to arbitrate. *Id*. at 1293.

The overwhelming weight of authority, including Seventh Circuit precedent, supports the conclusion that arbitration "has been had" under FAA Section 3, such that AAA's finding that the parties' may proceed to litigate in this Court pursuant to AAA Rule 10(b) is final. (Ex. 3, pg. 12).

## II.    Santander cannot cure termination of the arbitration proceedings now that arbitration "has been had" under FAA Section 3.

Santander will likely argue that it should get another bite at arbitration because it offered to pay the required fees after being notified the arbitration was terminated for its failure to do so. Santander will also likely argue that the case should be sent to arbitration with another forum. These arguments would lack merit.

Federal courts have consistently found that, once the arbitration organization terminates for non-payment of fees under its rules, that is the end of the arbitration road. *Greco* is on point. *Greco v. Uber Techs., Inc.*, No. 4:20-CV-02698-YGR, 2020 WL 5628966, at *1 (N.D. Cal. Sept. 3, 2020). There, like here, the plaintiff filed an arbitration demand against Uber with AAA. *Id*. But the AAA declined to administer the proceeding because Uber violated its policies, and sent a letter stating that "either party may choose to submit its dispute to the appropriate court for resolution." *Id*. Uber contacted the AAA, learning the matter was closed because it failed to pay administrative fees in two related matters. *Id*. at *2. Uber then paid those fees. *Id*. Uber requested the arbitration be reopened, but AAA refused, stating it would not reopen the matter unless the

parties agreed. *Id*. The plaintiff declined to reopen arbitration, and filed suit in court. *Id*. at *1-2. Uber moved to compel arbitration. *Id*. at *1. The Court denied the motion, finding that Uber's attempts to rectify non-payment were of no moment. "Once the AAA declines to arbitrate, the rules provide that 'either party may choose to submit its dispute to the appropriate court for resolution." *Id*. at *3. Like here, "*Uber expressly agreed tobe bound by these rules. It cannot now complain of their enforcement*." *Id*. (emphasis original). The court was in no position to question the AAA's decision because "AAA is in a far better position to know its own rules and to exercise discretion according to those rules." *Id*. at 4.

*See also Hernandez v. MicroBilt Corp.*, 88 F.4th 215, 220 (3d Cir. 2023) ("Hernandez and MicroBilt agreed to arbitrate in accordance with the AAA's rules, and those rules brought Hernandez back to court"); *Frazier v. X Corp.*, 155 F.4th 87, 98 (2d Cir. 2025) ("courts have no role under 9 U.S.C. § 4 to intervene to review arbitrators' rulings regarding the allocation of fees in the context of an ongoing arbitral proceeding" which "applies as well to an arbitral body's determination that a party has or has not met the conditions necessary for it to continue administering their arbitral proceeding"); *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1364 (11th Cir. 2023) ("whether a party has complied with the AAA's policies is an administrative decision that can and should be made by the AAA before it refers the case to an arbitrator."). *Stavis v. One Techs.*, LLC, No. 3:21-CV-2753-N, 2022 WL 3274533, at *3 (N.D. Tex. July 13, 2022) ("Stavis availed himself of the right to initiate arbitration with AAA, and by the very rules incorporated into the parties' arbitration agreement, he was led back out of arbitration and into court. No basis exists under FAA to compel him back into arbitration before AAA or any other arbitrator.").

Since Santander succeeded in convincing the Court that arbitrability questions must be decided by the arbitrator, it cannot now come back to this Court and ask it to *overturn* those very same arbitrability decisions. Compliance with AAA's fee policies was a decision solely for AAA to make in its "sole discretion." (Ex. 3. pg. 12). Arbitration has occurred consistent with the Court's prior order. "[A] party's decision not to abide by the procedural determinations of an arbitrator or arbitral body is ordinarily not a 'failure, neglect, or refusal *to arbitrate*'." *Frazier v. X Corp.*, 155 F.4th 87, 99 (2d Cir. 2025). Rather, it is "simply an *intra*-arbitration delinquency that arbitral bodies, like [AAA] here, are empowered to manage." *Id.*

Another reason the issue cannot be rectified is that failure to timely pay fees is considered a breach of the arbitration agreement. In *Pre-Paid Legal*, the Tenth Circuit stated that its holding was "consistent with decisions of other courts that have determined a party's failure to pay its share of arbitration fees breaches the arbitration agreement and ***precludes any subsequent attempt by that party to enforce that agreement.***" 786 F.3d at 1294. *See also Brown v. Dillard's, Inc.,* 430 F.3d 1004, 1011 (9th Cir. 2005) (explaining the defendant "breached the arbitration agreement by refusing to participate in properly initiated arbitration proceedings" and that the "breach was tantamount to a repudiation of the arbitration agreement"); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003) ("[F]ailure to pay required costs of arbitration was a material breach of its obligations in connection with the arbitration.").

Despite this wealth authority and the Seventh Circuit's decision in *Wallrich*, Santander has demanded that Brown initiate arbitration with the National Arbitration Forum ("NAF") or a different organization, and has threatened that, if she does not, it would initiate arbitration on its own. (Ex. 6, Emails from Santander's Counsel). But this would be impermissible for the reasons

outlined above. Arbitration has already "been had" in accordance with the parties' agreement. If Santander does not like the result, that is not a proper basis to overturn the AAA's decisions.

Moreover, there is no alternative forum the parties could select even if that was permissible (it isn't). The NAF is the only other forum the parties could have chosen. (Ex. 1, pg. 5). But the NAF no longer performs consumer arbitrations after it agreed to cease performing them in a settlement with the Minnesota Attorney General arising from widespread consumer fraud. *A-1 Premium Acceptance, Inc. v. Hunter*, 557 S.W.3d 923, 925 (Mo.banc 2018). Furthermore, in *A-1 Premium*, the Missouri Supreme Court recognized that "courts must rigorously enforce arbitration agreements according to their terms, ***including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted***." *Id.* at 926 (emphasis added). Based on these principles, the Missouri Supreme Court concluded that when parties agree to arbitrate "before – but only before—" particular arbitration forums, they cannot be compelled to arbitrate with forums not named in the agreement. *Id*. at 926. This also means that the substitution provisions of 9 U.S.C. § 5 cannot be used to force parties to arbitrate with different forums, since the FAA "reflects the overarching principle that arbitration is a matter of contract." *Id*.

Here, the arbitration agreement selects *only* two arbitration forums: AAA or the NAF. (Ex. 1, pg. 6). The parties selected the AAA (Doc. 49) and completed arbitration with it, resulting in Brown obtaining the right to proceed in Court. That closes the matter because the parties have already fulfilled FAA Section 3, being the arbitration "has been had." But, regardless, no substitution would be possible. The NAF cannot act as a substitute because it is defunct when it comes to consumer arbitration. And, under *A-1 Premium*, the parties' selection of *only* the AAA or the NAF is binding. The agreement's language says "the party initiating arbitration *must*

14

*choose*" either the AAA or NAF. Under *A-1 Premium*, no substitute can be forced upon Brown by Santander. AAA was the only available forum, and the result of the AAA arbitration proceedings is final. Santander's non-payment of the fees led to the matter being closed and, under the AAA rules incorporated into the agreement, Brown has the right to proceed in Court.

### III.    Alternatively, Santander waived arbitration by failing to make required payments in violation of the incorporated AAA rules.

"Failure to pay arbitration fees constitutes a 'default' under § 3" of the FAA. *Pre-Paid Legal Servs.*, 786 F.3d at 1294. Because Santander failed to pay its arbitration fees, it was in "default." *Id*.

In *Sink*, like here, the arbitration forum cancelled arbitration due to non-payment of fees. *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1199 (9th Cir. 2003). There, the Ninth Circuit permitted the lifting of a stay after the district court found the defendants had failed to pay their arbitration fees. *Id*. at 199-20. The court reasoned that the arbitrator's termination of the arbitration "constituted a finding of default because it was the result of Mr. Cahill's failure to pay." *Id*. at 1298.

Thus, Section 3 of the FAA provides two independent bases for the Court to lift the stay. First, arbitration "has been had" in accordance with the parties' agreement and the arbitral rules they chose to bind them. Second, as *Sink* and other cases hold, Santander was in "default" of proceeding with arbitration. As this Court ruled earlier, these were questions of arbitrability delegated to the arbitrator and cannot be disturbed. The stay should be lifted so the case may proceed in this Court.

### CONCLUSION

The Court should lift the stay it entered on August 8, 2025 (Doc. 48). Under the Seventh Circuit's decision in *Wallrich*, arbitration "has been had" pursuant to FAA Section 3. The case

15

law is clear that Santander cannot force Brown to re-open the AAA arbitration. Further, substitution of another forum would effectively nullify the result of the arbitration Santander compelled, and it is impossible anyway. The parties' contract does not permit substitute arbitration forums. The NAF was the only alternative to the AAA when the parties agreed to select AAA for arbitration. And, as *A-1 Acceptance* recognizes, the NAF is defunct. The only option for the parties was the AAA, and the AAA's arbitration has concluded. Since the Court found that threshold arbitrability questions were for the AAA to decide, the AAA's decision is final.

Separately, under *Sink*, the AAA's termination of arbitration reflects a finding that Santander is "in default" of proceeding arbitration, which is an independent basis under FAA Section 3 to preclude arbitration of an action.

Therefore, Brown requests the Court lift the stay of this case so it may proceed in Court.

SWMW LAW, LLC

By:    */s/ Benjamin S. McIntosh*
         Benjamin S. McIntosh, #6325759
         ben.mcintosh@swmwlaw.com
         Attorneys for Plaintiff
         701 Market Street, Suite 1000
         St. Louis, MO 63101
         (314) 480-5180
         (314) 932-1566 – Facsimile

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all counsel of record through the Court's e-filing system on this 6th day of December 2024.

*/s/ Benjamin S. McIntosh*