UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CRYSTAL BROWN,                          )
on behalf of herself and those          )
similarly situated,                     )
                                        )
          Plaintiffs                    )
                                        )    Case Number**:** 24-665-NJR
          v.                            )
                                        )
SANTANDER CONSUMER USA INC.,            )
                                        )
          Defendant                     )

---

**DEFENDANT SANTANDER CONSUMER USA INC.'S
OPPOSITION TO MOTION TO LIFT STAY**

---

DUANE MORRIS LLP
200 Campus Drive, Suite 300
Florham Park, New Jersey 07932-1007
 973-490-2700,
RJBrener@duanemorris.com

Counsel for Defendant
Santander Consumer USA Inc

## <u>INTRODUCTION</u>

The Court properly imposed a stay of this action because it adjudicated that Defendant Santander Consumer USA Inc. ("Santander") and Plaintiff Crystal Brown ("Brown") had entered into a valid and enforceable arbitration agreement requiring Brown's claims to be decided by arbitration. Because Santander has not defaulted or waived its right to arbitration, refused to abide by the American Arbitration Association ("AAA") rules, and the AAA stands ready to proceed with the arbitration, the stay should remain in place.

Every action Santander has taken with respect Brown's claims evidences its intent to arbitrate them: Santander (i) entered into an arbitration agreement with Brown, (ii) moved for a stay when Brown improperly filed an action in court; (iii) jointly reported to the Court that Brown intended to pursue arbitration, (iv) filed an answer and confirmed its counsel's appearance with the AAA; (v) immediately attempted to pay the filing fee upon receipt of the filing fee invoice; and (vi) offered to pay the filing fee the same day that the AAA informed it for the first time that payment had not occurred.

The sole act at issue here -- the good-faith, mistaken belief that the filing fee had been paid electronically -- does not evidence an intentional relinquishment of Santander's right to arbitration. Moreover, Brown has not been prejudiced by the electronic payment snafu. Brown did not file a Demand for Arbitration until two months had passed since the Court's stay of this action, and the only reason arbitration has not proceeded is because Brown has thwarted it. On the other hand, lifting the stay as a result of an electronic payment snafu would unduly prejudice Santander as it would require Santander to litigate a case where the parties had promised to arbitrate them.

The facts here also do not warrant a conclusion that the arbitration has been completed or "has been had," as Brown contends. In stark contrast to the cases relied upon by Brown, Santander

has not refused to pay the filing fee or otherwise intentionally violated AAA rules resulting in the AAA permanently terminating the matter. Instead, Santander believed it had made payment, offered to pay immediately upon learning payment had not been processed, and stands ready to make payment now if permitted. In addition, and notably, the AAA here has notified the parties that it too stands ready to proceed with arbitration upon Brown's consent. As a result, and also in contrast to those cases relied upon by Brown, Santander is not seeking an order from the Court mandating that Brown pay Santander's fees or anything else that would result in an end-run around AAA rules. Santander merely seeks to maintain the court-imposed stay so that the parties can proceed with arbitration as they agreed to do.

Permitting Brown to proceed in court under these circumstances would effectively allow her to circumvent the arbitration agreement based on a technical — and remediable — misstep. That result would be contrary to the spirit of the FAA and federal policy, which has long favored the enforcement of private arbitration agreements. Thus, the proper, fair, and practical result would be to maintain the stay so that the Brown's claims can be resolved by arbitration, as the parties intended.

## STATEMENT OF FACTS

### A.    Brown's vehicle purchase; the parties' agreement to arbitrate claims

On July 3, 2021, Brown bought a vehicle from a dealership in Missouri and financed the purchase price pursuant to a Retail Installment Sales Contract ("RISC") that was assigned to Santander. On March 13, 2023 she entered into an extension agreement with Santander that granted her a two-month extension to make certain payments due under the RISC (the "Extension Agreement"). (Doc. 10-3). The Extension Agreement contains the following arbitration agreement (the "Arbitration Agreement"):

2

> **ARBITRATION.** As additional consideration for [Santander's] agreement to forbear from exercising its remedies under the [RISC], you and [Santander] agree that upon written request by either party . . . any Claim, . . . shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the Rules of the chosen Administrator, and (iii) this Arbitration Provision.

*Id*. at p. 6. The Arbitration Agreement defines "Claim" as:

> any claim . . . including without limitation, any claims . . . relating to the [RISC] . . . or forbearance of payment . . whether the claim or dispute must be arbitrated . . . the validity of this [Extension Agreement] . . and . . . dispute based on state or federal law, or an alleged tort.

*Id*. The section called "Commencing Arbitration," concerns commencing an arbitration:

> the party initiating arbitration must choose one of the following arbitration Administrators and follow the rules and procedures that govern disputes established by the Administrator ("Rules") . . The provision directs the prospective claimant to the Rules and form of demand to initiate the arbitration, or to bring an action to compel arbitration and/or to stay the litigation of any claim.

*Id*. at p. 7. The section "Costs of Arbitration" states that (i) Santander will advance arbitration filing fees, administrative fee, or hearing fee if the Claimant is unable to pay to do so and informs Santander; (ii) "the arbitration" will decide who is ultimately responsible for paying those fees; and (iii) "other expenses, such as attorneys' fees, costs of travel to the arbitration, experts and witnesses" will be incurred "during arbitration" and determined by the applicable arbitration Rules. None of the provisions concern the payment of filing fees.

### B.    The allegations in the Complaint

On January 24, 2024, Brown commenced an action in the Circuit Court of St. Clair County, Illinois. Doc. 1-1. She alleges in her individually capacity and on behalf of a putative class that they purchased vehicles from dealerships across the country that "had pre-existing liens from another financial institution." *Id*. at p. 15, ¶ 2. Brown further alleges that Santander "pressured and

demanded" them to make monthly payments notwithstanding that the vehicles "were tainted by a violation of warranty of title under UCC 2-312." *Id*. at p. 15-16, ¶¶ 2-3. Brown asserts claims for violations of state consumer protection statutes and state-adopted versions of UCC § 2-312, negligent misrepresentation, and unjust enrichment. *Id*. at pp. 24-29, Counts I-IV.

### C.  The Court adjudicated that the parties entered into a valid and enforceable arbitration agreement.

Santander moved to stay the action pending arbitration pursuant the Arbitration Agreement (Doc. 33). Brown opposed the motion on several grounds: (i) that the RISC as a whole is invalid for a lack of consideration because she claims did not receive clear title to her car; (ii) that the Extension Agreement is invalid because it concerned payments she claims she did not owe due to the invalidity of the RISC; (iii) the Arbitration Agreement is not supported by a mutuality of obligations to arbitrate; (iv) the Extension Agreement was procured by mutual mistake and/or misrepresentation; and (v) the delegation clause in the Arbitration Agreement is invalid.

The Court rejected each of the arguments. The Court pointed out that "[a]s a matter of federal arbitration law, an arbitration provision is severable from the remainder of the contract." Agreements to arbitrate are "enforceable *apart from the remainder of the contract*," and thus must be enforced "according to their terms." "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Doc. 48 at p. 6. (citations omitted).

Here, as the Court emphasized in its opinion, Brown "does not dispute" the accuracy of the Arbitration Agreement or "her assent to it (her signature appears on the RIC and the Extension Agreement)." *Id*. at p. 7. Accordingly, the Court concluded correctly "that the parties entered into an agreement to arbitrate certain disputes." *Id*. The Court granted the Motion to Stay and ordered

the parties to file a joint status report by September 8, 2025 informing the Court whether Brown
will pursue arbitration. *Id*. at p. 19.

### D.    <u>Brown filed a demand for arbitration two months after the court decision</u>.

On August 22, 2205, counsel for the parties discussed next steps pursuant to the Court's
order. *See* Declaration of Robert J. Brener. Brown's counsel informed Santander's counsel that
Brown intended to pursue arbitration. *Id*. at ¶ 4. On August 29, 2025, Brown's counsel sent a draft
status report to Santander's counsel regarding Brown's intent to pursue arbitration. Santander's
counsel made a few edits to the draft status report and approved its filing. *Id*. at Exh. A. During
these communications both on the phone and in email correspondence, Santander's counsel made
it clear that Santander intended to participate in the arbitration. *Id*. at ¶ 6. The parties filed the draft
status report with the Court on September 8, 2025. Doc. No. 49.

<u>Two months</u> after the Court's decision and <u>one month</u> after she submitted the status report
to the Court, on October 9, 2025, Brown filed a Demand for Arbitration with the AAA and
informed the AAA that Santander's counsel would be Mr. Brener. *Id*. at Exh. B.

### E.    <u>The electronic payment snafu</u>

On October 23, 2025, the AAA sent its initial communication confirming the filing of the
Demand. *Id*. at Exh. C. The AAA stated that Santander must pay a $375 filing fee and to confirm
its counsel's email address so that AAA could send a secured Paylink to make electronic payment.
*Id*. The AAA also sent an invoice dated October 23, 2025 regarding the filing fee. *Id*. at Exh. C.

Within minutes of receiving the notice and invoice, Santander's counsel confirmed his
email address with AAA and received the secured Paylink. *Id*. at Exh. D. Immediately upon
receiving the secured Paylink, Santander's counsel inputted the necessary information and
believed that he had paid the $375 filing fee to AAA. *Id*. at ¶ 10. Thereafter on November 6, 2025,

Santander's counsel sent an email to AAA re-confirming that he is Santander's arbitration counsel and attached Santander's Answer to the Demand for Arbitration. *Id*. at Exh. E. The AAA did not state or inform counsel that Santander's payment had not been received. *Id*. at ¶ 11.

Instead, the next communication from the AAA occurred nearly a month later in a December 4, 2025 email sent at 5:31 pm to counsel that stated that the AAA closed the matter due to Santander's failure to make the filing fee payment. *Id*. at Exh. F. Santander's counsel was stunned by the notice as he believed that he had made payment six weeks earlier on October 23, 2025 and had not received notice of non-payment or a warning that the arbitration would be dismissed for lack of payment. *Id*. at ¶ 13. Minutes after receiving the notice, Santander's counsel emailed the AAA stating that he believed that payment had been made but would overnight payment to AAA. *Id*. at Exh. G. The next morning at 7:07 am, Santander's counsel sent another email to AAA stating that Santander would make payment that same day via Paylink so that the AAA would have payment immediately. *Id*. at Exh. H.

At noon on December 5, 2025, the AAA sent an email stating that AAA would not accept Santander's payment. Notably, however, the AAA stated that the case <u>was not permanently closed and could be reopened</u>: "**At this time, we are requesting a confirmation from the Claimant to determine if they would like to reopen this case. Once confirmation has been received from the Claimant, a paylink can be sent to Respondent.**" *Id*. at Exh. I. If so, the AAA would accept payment by Santander. Ms. Brown refused. *Id*. at Exh. J. Santander's counsel then wrote to Brown's counsel and asked Brown to reconsider. Santander's counsel stated that he understood that his firm had paid the filing fee on October 23, 2025. Brown's counsel did not respond. *Id*. at ¶ 18. Less than twenty-four hours later, Brown filed the within Motion to Lift Stay.

## ARGUMENT

## <u>THE STAY SHOULD NOT BE LIFTED</u>

**A.    SC did not default or waive its right to arbitrate; it has been and remains fully engaged in the arbitration process.**

Section 3 of the FAA, 9 U.S.C. § 3, provides that courts shall stay litigation in favor of arbitration so long as the party seeking the stay "is not in default in proceeding with such arbitration."). But the FAA does not define "[d]efault in proceeding with [the] arbitration." 9 U.S.C. § 3.

The Seventh Circuit has stated that "to determine whether a party has defaulted in proceeding with arbitration, thereby waiving the arbitration agreement, the court must analyze all the facts and circumstances." *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 712 F.2d 270 (1983); *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589 (7th Cir. 1992 ("waiver of the right to arbitration depends on the facts of each particular case"); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1296 (10th Cir. 2015) (explaining that "'default' in § 3 includes 'waiver'").

The Court must "determine whether based on all the circumstances, the [party against whom the waiver is to be enforced] has acted inconsistently with the right to arbitrate." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002) (citations omitted). Because a determination that the supposed defaulting party "has acted inconsistently with the right to arbitration" default requires more than negligence or a good-faith mistake.

This analysis rejects bright-line rules in favor of a holistic examination of the party's conduct throughout the litigation. Many factors are relevant to this analysis, but diligence or the lack thereof is particularly important. *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). A court should determine whether "the party seeking

arbitration . . . do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration[.]" *Smith v. GC Services Limited Partnership*, 907 F.3d 495, 499 (7th Cir. 2018) (citation omitted). Courts should also consider "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id. quoting Kawasaki*, 660 F.3d at 994. A court also should factor whether the alleged defaulting party's actions have prejudiced the other party. *Smith*, 907 F.2d at 501.

However, because federal policy favors the enforcement of private arbitration agreements, parties asserting waiver bear a "heavy burden" and courts should not "lightly infer" waiver. *St. Mary's Med. Ctr. of Evansville, Inc.* 969 F.2d at 590. Here, Brown cannot meet her "heavy burden" to establish that Santander defaulted and waived its right to arbitration. The undisputed facts demonstrate that Santander has and continues to act in a manner consistent with its right to arbitration. Santander (i) immediately moved to stay the proceeding to enforce the Arbitration Agreement; (ii) jointly reported to the Court that Brown intended to pursue arbitration; (iii) filed an answer with the AAA in response to the arbitration demand and confirmed its arbitration counsel; (iv) within minutes of receiving the AAA's October 23, 2025 filing fee invoice, downloaded the Paylink to pay the filing fee; (v) believed the filing fee payment had been paid 30 days prior to it being due; and (vi) offered to make payment immediately after it learned that payment had not been transmitted due to an electronic snafu.

There is no evidence that Santander intentionally relinquished its right to arbitrate. Every action taken by Santander demonstrated a consistent, deliberate intent to arbitrate. The only act that Brown can point to is the electronic payment snafu in which Santander's counsel believed that he had paid the filing fee on the same day that AAA issued the invoice. This "gotcha" moment

8

does not reflect an intent to avoid arbitration.  Further, it has not prejudiced Brown or delayed this action. Brown, herself, waited **two months after** the Court's decision to stay the action and one month after filing the joint report about Brown's intention to file arbitration before filing her Demand for Arbitration. Arbitration would have commenced had she initiated it earlier and has thwarted it now by refusing to continue.

Because there is no "willful" default -- only an administrative snafu ready easily remedied -- Santander cannot properly be deemed "in default" under § 3. Recent court decisions from around the country confirm that these circumstances do not constitute a default.  For example, in *Simone v. Citizens Bank, N.A.*, 2024 WL 3237081 (D.R.I. June 17, 2024), After receiving a warning and extensions to pay, Defendant's counsel submitted payment for AAA's administrative fees before the due date, but payment was not received until one day after the due date, causing AAA to close the arbitration. Plaintiff thereafter filed an action in court, and Citizens Bank moved to stay litigation pending arbitration. The Court issued a stay.

Despite failing to make timely payment and that AAA closed the arbitration, the Court found that Citizen Bank was not in default by waiving its right to invoke the arbitration clause because it did not act "inconsistently" with that right. *Id.* at *6. Citizen Bank's failure to make timely payment was a "technological snafu" that "thwarted the registration of the payment." *Id.* The Court distinguished the cases relied upon by Plaintiff because those cases involved non-complying parties which acted "inconsistently' with the right to arbitrate including making no effort to engage in arbitration or rectify their non-compliance. Citizen Bank "taking immediate efforts to rectify its payment issues is a critical distinction." *Id.* Notably, the Court credited the AAA's willingness to reopen the arbitration – but for Plaintiff's objection to re-open arbitration – a great deal in its decision to stay the matter pending arbitration. *Id.* at *7.

9

Similarly, in *French v. Whitefeather Holdings LLC*, 2020 WL 6383531 (D. Ariz. Oct. 30, 2020), Defendants' counsel failed to timely pay AAA filing fees as a result of (1) an inadvertent failure to calendar the payment deadline, and (2) being "swamped" with home renovations and other federal litigation. *Id*. at *2. Although, Defendants immediately contacted AAA for a new payment link and made payment, Plaintiff refused to consent to reopening the arbitration. In denying Plaintiff's notion to vacate the order requiring arbitration, the Court held that Plaintiff failed to show Defendants acted in a manner "inconsistent" with arbitration, and further that there was no prejudice to Plaintiff because AAA was "willing to proceed with arbitration." *Id*. at *3.

In *Hedding v. ET Publishing Int'l, LLC*, 2019 WL 11505381 (S.D. Fla. Oct. 31, 2019), Defendant failed to timely remit payment to the AAA after being reminded to do so, and the AAA closed the arbitration. Although AAA was willing to reopen the arbitration upon Plaintiff's consent to do so, Plaintiff declined and instead filed an action in court. Defendant argued that the matter would be in arbitration but for Plaintiff's objection to reopen the arbitration, as Defendant had remedied its nonpayment (caused by administrative delays in approving payment) and AAA was willing to reopen the arbitration. *Id*. at *1-2.

After noting that Plaintiff had a "heavy burden of proof because federal law favors arbitration," the court held Defendant to not have acted inconsistently with its right to arbitrate when considering "the totality of the circumstances." *Id*. at *3. The court stated that "a single late payment, without more, is insufficient to find that Defendant waived its right to arbitrate." *Id*. Further, Plaintiff failed to articulate any prejudice, as "[t]he arbitration here did not remain closed due to Defendant's failure to pay the arbitration fee or because AAA would no longer participate in Defendant's arbitrations. Instead, the arbitration remained closed because Plaintiff objected to reopening the case after Defendant had paid the filing fee." *Id*.

By contrast, courts that have concluded that a default occurred where a party has failed to pay arbitration fees have only done so upon a finding of an **intentional and deliberate refusal** to pay – an action demonstrating an intent not to arbitrate and to breach the arbitration agreement. *See e.g. Pre-Paid Legal Servs.*, 786 F.3d at 1294 ("By refusing multiple requests to pay, he allowed arbitration to terminate. Failure to pay arbitration fees constitutes a 'default' under § 3."); *Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197, 1199, 1201 (9th Cir. 2003) (Default found where defendant *refused* to pay fees multiple times, ceased participation, and "impeding the arbitration to the point where the arbitrator cancelled the arbitration"); *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 933 (11th Cir. 2019) (lifting stay after finding default and waiver due to party's refusal to pay fees "after multiple requests" for payment; "SmartPay acted inconsistently with its contractual right to arbitrate when it refused to pay the initial filing fee"); *Brown v. Dillard's, Inc.,* 430 F.3d 1004, 1011 (9th Cir. 2005) (defendant "breached the arbitration agreement by refusing to participate in properly initiated arbitration proceedings" and that the "breach was tantamount to a repudiation of the arbitration agreement").

The court in *Garcia v. Mason Cont. Prod., LLC*, 2010 WL 3259922, at *4 (S.D. Fla. Aug. 18, 2010) explained well how the facts here do not warrant a finding of default:

> [T]he record shows that this default was not simply a bureaucratic error; it was instead an intentional and/or reckless act because the AAA provided repeated notices to the Defendant that timely payment of the fee had not been received. Not taking that seriously, Defendant did not try and cure that default until after the AAA closed its case. By that point, however, the AAA—exercising the rules that these parties agreed to abide by—refused to reopen the case. There is no other description the Court can find for this self-created situation other than "default."

Because it did not intentionally relinquish its right to arbitrate, paid the filing fee but for an electronic payment snafu, pleaded to rectify the problem immediately, and did not prejudice Brown or cause delay, Santander did not default under Section 3 of the FAA. The stay should not be lifted.

**B.    The arbitration has not "been had" because SC has not refused to follow AAA rules, and the AAA has expressly stated that the matter may still proceed to arbitration.**

Brown argues that the Court should lift the stay the arbitration "has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. But the primary case relied upon by Brown, *Wallrich* v. *Samsung Elecs. Am., Inc.*, 106 F.4th 609 (7th Cir. 2024), and the other cases addressing this issue, involve materially different sets of facts than presented here and thus the case are readily distinguishable. In those cases, one or both parties had refused to pay the arbitration fees and thus abide by the AAA rules, resulting in the AAA having no choice but to permanently terminate the arbitration. The parties in those cases, seeking to stay an action or compel arbitration, also sought orders forcing the refusing party to pay the outstanding fee circumventing the AAA decision to permanently close the case. Here, by contrast SC was fully engaged in the arbitration process, attempted to make the filing fee payment, and stated it would make immediate payment when it learned that payment had mistakenly not be transmitted. Notably, also in contrast to those other cases, the AAA here said it would proceed with arbitration upon Brown's consent. As result, unlike in *Wallrich*, SC is not asking this Court to force Brown to pay outstanding fees or circumvent AAA rules or re-open a terminated case.. Rather it seeks only that Court retain the stay, consistent with the parties' intent and agreement.

1.    *Wallrich does not apply here.* In *Wallrich*, the plaintiffs, 35,000 Illinois consumers, filed arbitration demands before the AAA alleging that the defendants, two Samsung entities ("Samsung"), had unlawfully collected and stored sensitive data through their electronic

devices in violation of Illinois law. After the AAA required the consumers to submit revised filings, it requested that Samsung pay a $4,125,000 filing fee. Samsung **refused to pay**. *Id*. at p. 614. According to the decision, the arbitration agreement allegedly entered into by the parties "delegated threshold arbitration fees to the AAA." *Id*. at p. 620. When Samsung refused to pay its fees, the AAA in accordance with its rules, permitted the consumers to advance the fees. *Id*. But the consumers refused to pay Samsung's share of the filing fees and the AAA, rather than stay the arbitration, "**terminated the proceedings.**" *Id*.

The consumers filed a petition to compel arbitration under Section 4 of the FAA seeking an order compelling Samsung to pay the fee and arbitrate the claims. The district court concluded that the consumers demonstrated sufficiently the existence of a valid arbitration agreement and ordered Samsung to pay the fee and proceed to arbitration. Samsung appealed arguing that (i) the consumers failed to present evidence of an arbitration agreement and the district court wrongfully shifted the burden to Samsung on that issue and (ii) the district court exceeded its authority when it ordered Samsung to pay the fees. *Id*. at 618.

The Seventh Circuit reversed, finding that "[w]ithout adducing any evidence aside from their allegations, the consumers failed to meet their initial burden of proving the existence of a valid arbitration with Samsung. *Id*. at 619. Thus the Seventh Circuit concluded that the parties had not agreed to resolve their disputes by arbitration. The Seventh Circuit also stated that the district court exceeded its authority by "compelling Samsung to pay the AAA administrative fees" and forcing arbitration that had been terminated permanently by the AAA. *Id.* at 620-21.

   a. <u>The Court has concluded that the parties have a valid and enforceable arbitration agreement</u>. In *Wallrich*, plaintiffs failed to demonstrate that the parties entered into a valid arbitration agreement. The Seventh Circuit's conclusion that the plaintiffs

could not prove the existence of a valid arbitration agreement undoubtedly influenced its decision about whether to enforce it once both sides refused to pay the arbitration fees. By contrast, here the Court expressly concluded correctly "that the parties entered into an agreement to arbitrate certain disputes." In so doing, this Court has adjudicated that the parties have entered into a valid and enforceable agreement. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04 (1967); *National Iranian Oil Co. v. Mapco Int'l, Inc.,* 983 F.2d 485, 491 (3d. Cir. 1992) ("The Arbitration Act authorizes a district court to adjudicate the substantive issues of the making and performance of an arbitration agreement.").

        b.    <u>SC attempted to make payment and has abided by AAA rules</u>. In *Wallrich*, Samsung refused to pay the filing fee and in so doing refused to abide by the AAA rules. A review of the decision makes it clear that the refusal to pay the fees resulted in the AAA's permanent termination, and the Court's determination that a district court cannot compel payment and arbitration. 106 F.4th at 620-22. Here, SC moved to stay the case given the existence of the arbitration agreement, filed an answer to the Demand for Arbitration, engaged in the arbitration process in every manner, and did not refuse to pay the filing fees or abide by the AAA rules. On the contrary, SC's counsel downloaded the Paylink, filled out the payment information and believed payment had been processed. SC has followed the AAA rules and should not be foreclosed from pursuing the arbitration pursuant to the parties' valid and enforceable arbitration.

        c.    <u>The AAA has not permanently closed the arbitration</u>. Again, in *Wallrich* the AAA terminated the proceeding without any opportunity to return upon both parties' refusal to pay fees. Here, notably, the AAA **<u>has not</u>** permanently closed the case due to SC's mistaken belief that payment had occurred. On the contrary, the AAA stated that it stands ready to proceed with arbitration upon Brown's consent.

DM1\20387529.3

> d. <u>The Arbitration Agreement is silent with respect to fee disputes</u>.

The arbitration agreement at issue in *Wallrich* stated that arbitration fees would be decided by the AAA rules. But not so here. None of the provisions contained in the Arbitration Agreement specifically state that filing fee issues would be resolved by the AAA administrator and thus there does not exist clear and unmistakable evidence that the parties agreed that filing fee disputes would be resolved by the AAA. *Henry Shein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("[t]he Supreme Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, **so long as** the parties' agreement does not by 'clear and unmistakable evidence.'" (emphasis added).

The Arbitration Agreement says that the parties agree that any "Claim" shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the Rules of the chosen Administrator, and (iii) this Arbitration Provision. But the arbitration agreement does not include fees disputes as a "Claim." In addition. the section entitled "Costs of Arbitration" states that the ***arbitration***, itself, not the administrator, will decide the issue of how the payment of fees shall be allocated once the dispute has been substantively decided. This section does not refer to the payment of initial filing fees. Finally, contrary to Brown's assertion, the Court did not state that threshold arbitrability disputes that must be submitted to an arbitrator include fee issues, like the one here. Rather, the Court expressly stated that the delegation clause in the arbitration agreement sends questions of "whether the claim or dispute must be arbitrated . . . **[**and] the validity of this [Extension Agreement]"  to an arbitrator. The Court referred to "Brown's contract 'formation' arguments" – whether or not the RISC and Extension Agreement are valid and enforceable – that "at their core, dispute 'whether the claim or dispute must be arbitrated.'" Op. at p. 19. The Court was not referring to fee disputes.

e.      <u>Santander does not seek to overturn AAA rules</u>. The plaintiffs in *Wallrich* sought to directly overturn the AAA's decision to terminate the arbitration when Samsung refused to pay the filing fees by seeking an order forcing Samsung to pay its AAA filing fees and for the AAA to open a **<u>terminated</u>** arbitration. The Seventh Circuit concluded *that relief* amounted to an effort "to flout the parties' agreement and disturb the AAA's judgment." *Wallrich*, 106 F. 4th at 620. By contrast, Santander is not demanding that the Court force Brown pay SC's filing fees nor is it forcing AAA to proceed with a terminated arbitration proceeding. Rather, because the AAA says that the arbitration is only provisionally closed and can be reopened with Brown's consent, the Court should retain the stay so that Brown can proceed with an arbitration, if she so chooses, as she agreed to do. Santander is thus not "complaining about the AAA's decision" or attempting to "have a second bite of the apple, as Brown contends. It simply seeks to have Brown abide by her agreement to arbitrate disputes and for this Court to stay this action until the arbitration has been completed. That result would be **<u>consistent</u>** with the parties' arbitration agreement and the AAA express statement that this arbitration may still proceed.

2.      <u>The cases relied upon by *Wallrich* and Brown also do not apply</u>. The cases relied upon by *Wallrich* and Brown are distinguishable because in each of those cases, unlike here, (i) the parties refused to or could not pay arbitration fees and consciously intended not to follow AAA rules, (ii) the arbitrations had been permanently closed because of the parties' conduct; and (iii) one of the parties sought to have the Court force payment on another, circumvent the AAA rules or force the AAA to open a permanently closed case. *See Noble Capital Management, L.L.C. v. US Capital Global Investment Management, L.L.C.*, 31 F.4th 333 (5th Cir. 2022**)** (arbitration had "been had" following nonpayment of fees after receipt of warning and final closure of arbitration without possibility of reopening; "[n]either Noble nor US Capital paid the

Fund's expenses in order to sustain the arbitration; " the JAMS Panel "terminated the arbitration, and the arbitration was officially closed; "**there is no arbitration to return to**, therefore the district court properly denied U.S. Capital's motion to stay judicial proceedings and compel arbitration."); *Tillman v. Tillman*, 825 F.3d 1069 (9th Cir. 2016**)** (arbitration had "been had" where arbitration was "terminated" without possibility of reopening due to party's inability to pay fees and refusal of the other to cover them); *Pre-Paid Legal Servs*, 786 F.3d at 1294-95 (AAA "determined the arbitration had gone as far as it could due to Mr. Cahill's repeated refusal to pay fees;" AAA terminated the proceeding permanently); *Dealer Computer Services, Inc. v. Old Colony Motors, Inc*. 588, F.3d 884 (5th Circ. 2009 (the district court could not force the refusing party to pay the fees); *Lifescan, Inc. v. Premier Diabetic Services, Inc.* 363 F.3d 1010 (9th Cir. 2004) (not a filing fee case; Premier could not pay the hearing fees, Lifescan refused to advance them, and the AAA stopped the proceedings; district court could not force payment of fees by Premier)[1]

Brown's reliance on *Abram v. Title Max of Missouri, Inc.* 642 S.W.3d 74 (Mo. Ct. App. 2023 is also misplaced. As initial matter, *Abram* is decided under Missouri law. While the underlying RISC is governed by Missouri law, the arbitration agreement and issues related to arbitration are governed by the FAA. Beyond that, the facts are materially different. In *Abram*, a number of consumers initiated arbitration against TitleMax with the AAA. TitleMax failed to comply with AAA polices, namely register its arbitration agreements on the Consumer Clause

---

[1] Brown's other cited cases are easily distinguishable because they involve FAA Section 4 cases, not Section 3 cases, and thus require a different analysis i.e. whether defendants  had been "aggrieved" by their counterparties' "failure, neglect, or refusal" to arbitrate after AAA declined to administer their arbitrations. *See e.g. Frazier v. X Corp.*, 155 F.4th  87 (2d Cir. 2025); *Hernandez v. MicroBilt Corp.*, 88 F.4th 215, 220 (3d Cir. 2023); *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1363 (11th Cir. 2023); *Stavis v. One Technologies, LLC*, 2022 WL 3274533 (N.D. Tex. 2022); *Greco v. Uber Technologies, Inc.*, 2020 WL 5622866 N.D. Cal 2020.

Registry, confirm that the business remains active. It also refused to pay arbitration fees. The AAA issued a letter in which the AAA "declined to administer **this claim and any other claims** between TitleMax . . and its consumer at this time and closed the file" *Id*. at 82.

The consumers filed an action in court and TitleMax moved to compel arbitration arguing that the plaintiffs entered into valid and binding arbitration agreements pursuant to loan agreements with arbitration provisions. The trial court denied the motion and the appellate court affirmed that decision. But the court's rationale for doing so doesn't apply here for several reasons. TitleMax failed to establish the existence of a valid and enforceable arbitration agreement. *Id*. at 84 (TitleMax filed "twelve exhibits, seven of which were blank, unsigned or redacted versions of the loan agreement purportedly signed by Plaintiffs"). Here, the Court has concluded that a valid and enforceable arbitration agreement exists. In addition, the AAA closed the action because "**prior to the filing of this arbitration**, TitleMax . . . failed to comply with AAA's policies regarding consumer claims," namely properly registering its arbitration agreements." *Id*. at 82. Here, there is no dispute that Santander was in full compliance with AAA rules prior to this arbitration. Further, TitleMax did not demonstrate it had cured the registration issue. *Id*. at 92. Here, again, there is no pre-arbitration rule violations that Santander had to cure. But with respect to payment of the filing fee, Santander's counsel believed the filing fee had been paid and then offered immediately to cure the problem by paying the filing fees but was rebuffed.  Finally, TitleMax waived its right to arbitration by refusing to pay the arbitration fees. *Id*. at 81-82. As explained above, Santander has not done so.

The appellate court was also faced with a muddled record, questions of what was preserved on appeal, and no transcript of the proceedings in the trial court. As a result, the appellate court was reduced to determining whether there is "any "reasonable theory within the pleadings and

supported by the evidence." *Id*. at 88, 90-91. It concluded that the trial court could have reasonably relied on the AAA decision to close the action based on TitleMax's failure to register its arbitration agreement. *Id*. at 93-95. But that AAA decision was based on actions, unlike here, that occurred *prior to the arbitration*. The AAA decision, and thus the appellate court decision, therefore **had nothing to do with the payment of fees**, and certainly not the good-faith belief that the fees had been paid.

Because this set of facts does not involve a party or both parties refusing to abide by AAA rules, an arbitration that had been closed permanently due to the refusal to abide by the rules, and a party seeking to force payment, open a closed arbitration or make an end-run around the AAA rules, the arbitration has **not** "been had." The AAA stands ready to proceed. The stay should not be lifted. *See Union Central Life Ins. Co. v. Andraos*, 2011 WL 6091771 at *5 (S.D. Ohio Oct. 21, 2011) (Following Defendants' failure to pay arbitration fees and AAA's subsequent termination of the arbitration, the court held that (1) whether the nonpayment amounted to waiver/default was for AAA to decide, per the parties' contract, and (2) given that AAA consented to reopening the case upon payment of the fees, "the record does not support plaintiff's inference that AAA's termination for nonpayment was a final determination that the arbitration may not proceed).

### C. Public policy and the purpose of the FAA favor enforcing arbitration agreements even where a filing fee was mistakenly unpaid.

Federal policy favors the enforcement of private arbitration agreements. *St. Mary's Medical Center of Evansville*, 969 F.2d at 587. This policy is embodied in the FAA, which provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. Because federal policy favors the enforcement of private arbitration agreements, the Court should enforce the parties' arbitration agreement, particularly where SC's actions demonstrated an intent arbitrate and the

AAA stands ready to proceed. If courts routinely lift stays for inadvertent fee errors, arbitration would be vulnerable to manipulation. Parties could game the system, forcing arbitration, then "accidentally" failing to pay fees, to shift back to litigation. That result undermines the FAA's purpose of efficient, binding dispute resolution. In contrast, continuing the stay preserves the parties' bargain and avoids creating a windfall for a plaintiff who agreed to arbitrate.

## **CONCLUSION**

The Motion to Lift the Stay should be denied.


Dated:  January 9, 2026                    **SANTANDER CONSUMER USA INC.**

                                           By: /s/ *Robert J. Brener*
                                           Robert J. Brener (RB 3764)
                                           DUANE MORRIS LLP

DM1\20387529.3

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 9, 2026, he caused the foregoing document to be electronically filed via the Court's e-filing system:

Ben McIntosh
SWMW LAW, LLC
701 Market Street, Suite 1000
St. Louis, MO 63101
*Counsel for Plaintiff*

/s/    *Robert J. Brener*
Robert J. Brener

21