IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRYSTAL BROWN, On Behalf of Herself and Those Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SANTANDER CONSUMER USA INC.,<br><br>Defendant. | Case No. 3:24-CV-00665-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Crystal Brown ("Brown") brings this putative class action on behalf of herself and others who financed the purchase of a car that—unbeknownst to them—was encumbered by a preexisting lien. Defendant Santander Consumer USA, Inc. ("Santander") buys the financing contracts from the dealerships that sell these cars, thus making it Brown's and the putative class members' creditor.

On August 8, 2025, the Court stayed the case pending arbitration pursuant to section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. (Doc. 48). The parties agreed to proceed with arbitration before the American Arbitration Association ("AAA") and took steps to open a case in that forum. The process hit the skids when Santander's counsel attempted to pay his client's filing fee for the arbitration but, for whatever reason, the payment did not go through. The AAA, upon not receiving Santander's filing fee, closed the case and invited the parties to return to court. Brown seeks to take advantage of Santander's error, arguing that arbitration "has been had" under section 3 and that the

stay should therefore be lifted.

## BACKGROUND

Nearly two years after Brown financed the purchase of a car and Santander acquired the financing contract, she entered into an "Extension Agreement" with Santander to extend the due dates of certain payments. (Doc. 48). The Extension Agreement contained an arbitration provision, requiring Brown to resolve certain "claims" against Santander through arbitration. (*Id.*). Once the case landed in this district court and the undersigned determined that federal subject matter jurisdiction was secure, Santander moved for a stay pending arbitration, which the Court granted over Brown's objection.

With the case stayed, Brown chose to arbitrate before the AAA. (Atty. Robert Brener's Affidavit ¶ 7, Doc. 56)). The arbitration agreement, as relevant here, required the parties to "follow the rules and procedures that govern disputes established by the chosen [arbitration] Administrator"—here, the AAA. (Doc. 51-1, p. 6). On October 23, 2025, the AAA sent the parties a letter stating: "To ensure that the filing requirements are complete, **the business is requested to submit <u>filing fees of $375</u>**." (Doc. 51-4, p. 1) (bold font and underlined in original). The AAA also directed Santander to submit its payment "**by credit card or electronic check. Please confirm the email address AAA may send a secured Paylink with instructions to submit payment via either method.**" (*Id.*) (bold font in original). Finally, the AAA warned that "**[t]he requested payment should be received no later than 30 days from the date of this letter or the AAA may decline to administer this dispute if the business does not timely respond.**" (*Id.*) (bold font in

original).

Santander's counsel responded to the AAA's communication "within minutes" by confirming his email address as instructed. (*Id.* ¶ 10). He then received a "Paylink" to satisfy his client's fee payment obligation. (*Id.*). Counsel further states that: "[u]pon receiving the secured Paylink, I immediately entered the necessary payment information and pressed the link to send payment. I believed and understood that I had paid the $375 filing fee to AAA on behalf of [Santander]." (*Id.*). The payment never reached its intended recipient. On November 6, 2025, defense counsel reached out to the AAA, confirming, again, that he was Santander's counsel and submitting its answer to Brown's demand for arbitration. (*Id.* ¶ 11). The AAA did not respond to this communication or indicate that it had not received Santander's payment of the arbitration fee. (*Id.*).

On December 4, 2025, the AAA informed the parties that it was "declining to administer this case" pursuant to Rule R-10(b) of the AAA's Consumer Arbitration Rules and Mediation Procedures due to Santander's failure to pay the arbitration fee. (Doc. 51-2, p. 1). It also informed the parties that "now that the AAA declines to administer this arbitration, either party may choose to submit its dispute to the appropriate court for resolution." (*Id.*). Defense counsel was "stunned" by this development because he believed he had made the necessary payment six weeks earlier and had received no notice that the payment did not go through. (*Id.* ¶ 13). The following day, December 5, 2025, the AAA told the parties that it was willing to "reopen" the case if Brown consented, and that, if she did, it would send a new Paylink to Santander. (*Id.* ¶ 15). Brown did not consent and, instead, filed the instant motion less than 24 hours later. (*Id.* ¶¶ 16-17).

So, although the parties have taken some steps to arbitrate, they have now run into an issue that Brown seeks to exploit.

### DISCUSSION

Under section 3 of the FAA, a court may lift an arbitration stay once arbitration "has been had" or if the party seeking the stay is in "default" of the arbitration proceedings. 9 U.S.C. § 3. Brown argues that both grounds to end the stay are met here. The Court will consider each of them in turn.

1. <u>Arbitration "has been had"</u>

Brown relies primarily on the Seventh Circuit's decision in *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609 (7th Cir. 2024), to support her contention that arbitration "has been had" under section 3. There, several thousand consumers initiated arbitration proceedings against Samsung for its alleged improper collection of biometric information. *Id.* at 613. Samsung refused to pay its portion of the arbitration fee—over $4,000,000. *Id.* at 614. After the consumers refused to advance Samsung's portion of the fee, the AAA "terminated" the proceedings. *Id.* at 613. The consumers then went to federal court to request an order compelling arbitration under section 4 of the FAA.[1] *Id.* The district court granted the consumers' petition and ordered Samsung to pay its portion of the filing fee. *Id.*

The Seventh Circuit reversed because the parties had fully exercised their

---

[1] Section 4 states in relevant part: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

contractual right to arbitrate.[2] *Id.* at 621-22. Samsung, by refusing to pay over $4,000,000 in fees, had effectively brought the arbitration to a dead end. *Id.* at 622. "Thus, even in a case like this one, where an arbitration proceeding ends before reaching the merits, the parties still exercised their contractual right to arbitrate prior to judicial resolution in accordance with the terms of their agreements." *Id.* (quotation marks omitted).

Brown's invocation of *Wallrich* stretches that decision beyond its reach. The parties' arbitration agreement in *Wallrich* had delegated threshold fee issues to the AAA's rules of procedure. *Id.* at 621. In applying these rules, the AAA was entitled to—and did— "terminate" the proceedings when Santander *refused* to pay its part of the fees. *Id.* The AAA was thus left with the choice of allowing an arbitration to proceed without receiving over $4,000,000 in fees or terminating the proceedings altogether. *Id.* at 620. It chose the latter. But termination was also the AAA's option of last resort. It had attempted to resolve the fee dispute in the first instance by offering the consumers an opportunity to advance Samsung's fees. *Id.* at 614. When the consumers refused, the AAA threatened to terminate the proceedings "unless it heard otherwise." *Id.* And when no one budged and the AAA was short over $4,000,000, it decided to terminate the arbitration, presumably because it was asked to do so at a loss. *Id.*

Here, the AAA did not "terminate" the proceedings—at least not in the same way it did in *Wallrich*. It stands ready to serve as the parties' arbitrator with Brown's consent.

---

[2] The court also found that that the consumers had failed to establish the existence of a valid arbitration agreement because they had only identified a generic arbitration agreement that accompanied Samsung's products, but had not established their connection to the agreement—*i.e.*, it was unclear whether they were in fact the purchasers of Samsung products who agreed to the arbitration agreement. *Wallrich*, 106 F.4th at 619-620.

The Seventh Circuit recognized in *Wallrich* that the AAA could have taken any number of paths in handling the fee dispute other than terminating the proceeding: "it could have stayed the case or threatened to decline administering future consumer arbitrations with Samsung." *Id.* at 622. Regardless of the AAA's chosen disposition, however, the district court should not have second-guessed it because the AAA's rules and procedures—which were incorporated into the parties' arbitration agreement—gave it "substantial discretion" to resolve fee disputes as it saw fit. *Id.* at 613.

The same is true here. Under Rule R-10 of the AAA's Consumer Arbitration Rules and Mediation Procedures, the AAA, "in its sole discretion, may make the administrative determination to decline to accept a Demand for Arbitration, stop the administration of an ongoing arbitration, and/or decline to administer future cases from a party" if a party fails to pay a fee assigned to it. Am. Arbitration Ass'n, *Consumer Arbitration Rules and Mediation Procedures* (2025). And like in *Wallrich*, the parties incorporated these rules, including R-10, into their arbitration agreement. But what sets this case apart from *Wallrich* is that the AAA expressed its willingness to "reopen" the arbitration if Brown consents, based on its understanding that Santander fully intends to pay its share of the arbitration fee—unlike Samsung, which outright refused to do so. The AAA has thus exercised its discretion in a way that distinguishes it from its disposition in *Wallrich*, something the Seventh Circuit expressly recognized it was entitled to do. And for that reason, the arbitration here has not reached an endpoint that is comparable to the one that animated *Wallrich*. *See Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) (holding that arbitration had been had when "[t]he AAA determined the

arbitration had gone as far as it could due to Mr. Cahill's repeated refusal to pay the fees" (cited with approval in *Wallrich*)); *Tillman v. Tillman*, 825 F.3d 1069, 1073 (9th Cir. 2016) (same when "[t]he arbitration was terminated because Tillman could no longer pay the arbitrator's fee"); *cf. Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1199 (9th Cir. 2003).

Brown appears to interpret *Wallrich* as imposing a strict liability requirement on the party seeking arbitration. As she sees it, once an arbitration forum closes the proceedings, no matter what prompts it to do so and no matter its willingness to allow the noncompliant party to cure its procedural noncompliance, the arbitration "has been had." The Court respectfully declines to read *Wallrich* as imposing such an unforgiving rule. It is one thing for a party to refuse to pay its fees to an arbitration forum as Samsung did; it is another for it to make an innocent mistake and thereby fail to timely pay its fee as Santander did. The Court thus finds *Wallrich* distinguishable on its facts.

Finally, Brown maintains that if her motion to lift the stay is denied, the Court would be inserting itself into a fee dispute involving her, Santander, and the AAA. Not so. Brown is correct that "procedural issues, like fee disputes, are presumptively not for the judge, but for an arbitrator, to decide" *Id.* at 620 (citation modified). But the Court has no intention of inserting itself into the AAA's fee allocation process. The AAA has indicated its willingness to "reopen" the arbitration with Brown's consent. The Court is simply allowing it to do so. And, contrary to Brown's protestations, the Court takes no position on how the AAA allocates its fees or enforces its payment requirements. Nor is the Court directing the AAA to accept Santander's late payment. All it does is maintain the status quo because arbitration has not yet been had.

*Wallrich* supports the proposition that the parties may litigate their claims in court once an arbitral body determines that it has taken the matter as far as it can (*e.g.*, because a party affirmatively *refuses* to pay its fee). It did not deal with human error in the payment of an arbitration fee. *Wallrich*, *Cahill*, and *Tillman* deferred to the arbitrator's decision to terminate the arbitration only after a party refused to pay a fee or was unable to do so. Thus, in those cases, the arbitration forum had no way of collecting its service fees and consequently ended the proceedings rather than continue without payment. Accordingly, in the Court's view, these cases do not mandate an order lifting a section 3 stay based on a payment "snafu."

2. Default

The FAA does not define the term "default" under section 3. The Seventh Circuit, however, has construed it in terms of a party's waiver of the right to arbitrate. "To determine whether a party has defaulted in proceeding with arbitration, thereby waiving the arbitration agreement, the court must analyze all the facts and circumstances." *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 712 F.2d 270, 272 (7th Cir. 1983). This holistic examination of the facts helps courts determine whether "the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002) (citation modified). Brown bears a heavy burden to show waiver because "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of *waiver*, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (emphasis added).

Santander maintains that its failure to pay the arbitration fee is attributable to human error and that it has always acted consistently with its intent to arbitrate. As such, it argues that it has not waived its right to arbitrate per its agreement with Brown. The Court agrees. Santander has engaged in no conduct suggesting waiver. It moved to stay the case pending arbitration one week after the Court denied Brown's motion to remand the case to state court. When the Court granted Santander's motion for a stay, Santander engaged with Brown to get the arbitration going. It sought to pay its portion of the arbitration fee "within minutes" of being asked to do so. The only evidence of its "default" is a "snafu" in its payment to the AAA. It has never chosen to forgo arbitration in favor of a judicial forum, and, in fact, has insisted on arbitration "at every turn." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recr. Prods., Inc.*, 660 F.3d 988, 996 (7th Cir. 2011); *see also Ernst & Young*, 304 F.3d at 756 ("A contractual right to arbitrate may be waived expressly or implicitly, and a party that chooses a judicial forum for the resolution of a dispute is presumed to have waived its right to arbitrate."). Santander's good faith mistake is thus not enough to support Brown's waiver argument. *Compare Ohio-Sealey*, 712 F.2d at 272-74 (holding that party seeking arbitration had waived its right to arbitration and was therefore in "default" under section 3 because it offered its opponent the option of proceeding with arbitration *or* litigation and then "acquiesced" in its opponent's choice of litigation by participating in the litigation for several years).

The Court also finds it important to acknowledge the obvious here. For whatever reason, Santander's $375 payment did not reach its intended recipient. Perhaps the

internet went out at an inopportune time, perhaps the credit card that counsel used to pay the fee had expired, or the payment failed for some other reason. While the aggrieved party is a large financial institution that should avoid mistakes like this, they still can happen. Counsel attempted to pay the filing fee "within minutes" of receiving the payment link. When he learned that the payment had not gone through, he immediately tried to make it. And when the AAA told the parties it would "reopen" the case with Brown's consent, she refused. To hold that counsel's electronic payment error strips Santander of a bargained-for right appears to be a punishment unbecoming of the crime.

Several district courts have reached the same conclusion under similar circumstances. *See e.g.*, *Simone v. Citizens Bank, N.A.*, No. 23-545, 2024 WL 3237081, at *5 (D.R.I. June 17, 2024) (denying motion to lift arbitration stay where Citizens Bank failed to pay fee on time and AAA declined to administer arbitration but was willing to reopen proceedings upon payment and with other party's consent); *Jaramillo v. TXU Energy*, No. EP-20-CV-00115, 2021 WL 1177888, at *3 (W.D. Tex. Mar. 29, 2021) (same because payment failure was attributable to counsel's hospitalization with COVID-19 and her client had therefore not waived its right to arbitration); *French v. Whitefeather Holdings, LLC*, No. CV-20-00349, 2020 WL 6383531, at *2 (D. Ariz. Oct. 30, 2020) (same where counsel neglected to calendar payment deadline and was "swamped with home renovations and other federal litigation"). The Court finds these decisions instructive.[3]

---

[3] The Court declines to follow the Northern District of California's decision in *Greco v. Uber Tech., Inc.*, No. 4:20-cv-02698, 2020 WL 5628966, at *2-4 (N.D. Cal. Sept. 3, 2020), to the extent it is inconsistent with its decision here. In *Greco*, Uber was notified that it was not in compliance with the AAA's policies regarding consumer claims when one of its riders initiated an arbitration proceeding against it. *Id.* at *1. Uber also was delinquent in paying the AAA's fees in two unrelated arbitrations. *Id.* at *2. The AAA thus "declined

Thus, to the extent that Brown argues Santander is in "default" of the arbitration proceedings, her argument is unpersuasive. *Cf. Kawasaki*, 660 F.3d at 994-95 (party's response to motion to reopen litigation and insistence on arbitration in open court did not constitute waiver).

To sum things up. The parties are effectively in the same position they were in August 2025 when the Court initially stayed the case pending arbitration. At the time, Brown valiantly but unsuccessfully opposed Santander's motion for a stay. And just as she was then, Brown is now free (but not required) to pursue arbitration.

## CONCLUSION

For these reasons, Plaintiff Crystal Brown's Motion to Lift the Stay pending arbitration (Doc. 51) is **DENIED**.

## NEXT STEPS

At the end of her reply brief (Doc. 57), Brown indicated her desire to appeal any decision that denied her motion to lift the stay. Because the Court has now done so, it appears the most effective way to advance the case is for the parties to go to arbitration until it "has been had" under section 3. And because this Court has only stayed the case under section 3 (as opposed to compelling arbitration under section 4), its order appears

---

to administer" the rider's arbitration claim. *Id.* After Uber paid its outstanding fee balances and cured its noncompliance with the AAA's policies, it requested that the AAA reopen the case. *Id.* The AAA declined to do so "unless the parties agree to reopen the matter." *Id.* The court held that arbitration "had been had" under section 3 because "[o]nce AAA declines to arbitrate, the rules provide that 'either party may choose to submit its dispute to the appropriate court for resolution.'" *Id.* at *3. Although *Greco* shares some similarities with this case, the AAA's decision was animated by Uber's noncompliance with the AAA's rules and prior payment delinquencies in other matters, whereas here, Santander made an innocent payment mistake. Moreover, the court in *Greco* declined to "force the case back to arbitration" under section 4. *Id.* The Court here simply maintains the stay under section 3 and gives Brown the option of proceeding with arbitration.

to be interlocutory and not subject to an immediate appeal. *See Wallrich*, 106 F.4th at 616 (explaining that "a stay entered under § 3 is an interlocutory order precluded from immediate appellate review under § 16(b)(1)").

Nevertheless, the Court is willing to consider further briefing on this issue if Brown wishes to pursue an appeal. If she does, she shall file a motion explaining why an appeal at this stage of the case is warranted under Seventh Circuit and/or Supreme Court precedent. Her motion will be due on or before **February 26, 2026**. Santander will then have **14 days** to file a response to Brown's motion.

**IT IS SO ORDERED.**

DATED: February 12, 2026

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**